FILED

2005 Nov-09  AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

2005 NOV -7  PM 4: 20

|  |  |  |
|---|---|---|
| SHERLEE GINSBERG, | ) |  |
| BERNARD GINSBERG, | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| vs. | ) | CV-05-CO-2296-S |
|  | ) |  |
| LEDIC REALTY MANAGEMENT | ) |  |
| SERVICES, INC., C-K | ) |  |
| BRECKENRIDGE, LLC., CLK | ) |  |
| MANAGEMENT CORP., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## NOTICE OF REMOVAL

COME NOW the Defendants, Ledic Realty Management Services, Inc., C-K Breckenridge, LLC, and give notice, with full reservation of all defenses, that this cause is hereby removed from the Circuit Court of Jefferson County, Alabama, to the United States District Court of the Northern District of Alabama, Southern Division. As for their Notice of Removal, defendants show unto the Court as follows:

1.    This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of cases.

2.    Plaintiffs instituted this civil action on October 5, 2005, against the Defendants in the Circuit Court of Jefferson County, Alabama with an assigned case number of CV 05-5936. None of the Defendants are citizens of the State of Alabama. The complaint demands judgment against the Defendants for  actual and punitive

damages based on breach of contract, negligence, misrepresentation, suppression, outrage and nuisance alleging as part of their damages that they suffered the following injuries alleged in paragraph 13 of the complaint:

> In October 2004, Bernard Ginsberg resided in the hospital for six days due to a stroke caused by emotional distress and had a stent placed in his heart.  In November 2004, once again due to emotional and financial stress, Bernard Ginsberg spent three weeks in the hospital because of a Gastro intestinal bleed which resulted in renal failure and chest pains.  After hospitalization, Mr. Ginsberg resided at Lakeshore Rehab for another three weeks.  In January 2006, the Plaintiff was taken by emergency transport to the Veteran's Hospital. The Plaintiff, Sherelee Ginsberg, pulled a muscle in her groin due to a hurried attempt to vacate the apartment.  The Defendants caused the Plaintiffs to suffer great pain, both mentally and physically, which resulted in permanent injuries.
>
> In addition, the Plaintiffs were forced to relocate in October of 2004, the disabled Plaintiffs had to pay movers and suffered other costs associated with evacuation.

The first notice of this action to any Defendant as required by 28 U.S.C. § 1446(b) was on October 11, 2005, when Defendant C-K Breckenridge LLC was served with a copy of the summons and complaint.  This Notice of Removal is filed within thirty days of the first service of the Complaint upon any defendant, pursuant to 28 U.S.C. § 1446(b).  See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999).   A true and correct copy of all process, pleadings, and orders served on all Defendants in this action is attached as Exhibit A, and is incorporated by reference herein.

3.    This action could have originally been filed in this Court under 28 U.S.C § 1332 because complete diversity of citizenship exists between Plaintiffs and Defendants,

and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.      Plaintiffs are, and were at the institution of this civil action, and at all times intervening, citizens and residents of the State of Alabama.   See Exhibit A, Complaint, ¶ 1.

5.      None of the defendants are, or were at the institution of this civil action or at any time intervening, citizens or residents of the State of Alabama.

6.      Ledic Management Services, Inc. is, and was at the time of the institution of this civil action, a corporation organized under the laws of the State of Texas with its principal place of business in the State of Tennessee.  Ledic Management Services, Inc., is not, and was not at the time of the institution of this civil action, a citizen of the State of Alabama.

7.      C-K Breckenridge, LLC is, and was at the time of the institution of this civil action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New York. C-K Breckenridge is not, and was not at the time of the institution of this civil action, a citizen of the State of Alabama.

8.      CLK Management Corp. has not been served.  Removing defendants are advised and believe CLK Management Corp. is, and was at the time of the institution of this civil action, a corporation organized under the laws of the State of New York with its principal place of business in the State of New York and is not, and was not at the time of the institution of this civil action, a citizen of the State of Alabama.

9.      None of the Defendants are now, and were not at the time of the filing of the Complaint, citizens of the State of Alabama, residents of the State of Alabama,

incorporated under the laws of the State of Alabama, or had their principal place of business within the State of Alabama within the meaning of the Acts of Congress relating to the removal of causes.

10.    The style of the complaint lists Fictitious Defendants identified as Defendants A, B, C, D, E, F. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

11.    More than $75,000 is placed in controversy in this case. The Plaintiffs' complaint alleges actual and punitive damages based on breach of contract, negligence, misrepresentation, suppression, outrage and nuisance claiming as part of their damages that they suffered the following injuries alleged in paragraph 13 of the complaint:

> In October 2004, Bernard Ginsberg resided in the hospital for six days due to a stroke caused by emotional distress and had a stent placed in his heart. In November 2004, once again due to emotional and financial stress, Bernard Ginsberg spent three weeks in the hospital because of a Gastro intestinal bleed which resulted in renal failure and chest pains. After hospitalization, Mr. Ginsberg resided at Lakeshore Rehab for another three weeks. In January 2006, the Plaintiff was taken by emergency transport to the Veteran's Hospital. The Plaintiff, Sherelee Ginsberg, pulled a muscle in her groin due to a hurried attempt to vacate the apartment. The Defendants caused the Plaintiffs to suffer great pain, both mentally and physically, which resulted in permanent injuries.
>
> In addition, the Plaintiffs were forced to relocate in October of 2004, the disabled Plaintiffs had to pay movers and suffered other costs associated with evacuation.

See Exhibit A, Complaint. Therefore, the Plaintiffs have placed more than $75,000.00 in controversy in this case.

12.     As set forth above, this Notice of Removal is filed within thirty days of service on any of the Defendants in this action.   All properly joined and served Defendants consent to and join with this Notice of Removal.

13.     A copy of this Notice has been filed with the Clerk of the Circuit Court of Jefferson County, Alabama.

14.     All prerequisites for removal under 28 U.S.C. § 1441 have been met, and the procedure for removal under 28 U.S.C. § 1446 has been complied with.

15.     If any question arises as to the propriety of the removal of this action, the removing Defendants requests the opportunity to present a brief and oral argument in support of this Court's subject-matter jurisdiction.

WHEREFORE, the Defendants request this Honorable Court to take cognizance of and jurisdiction over this cause, to effect the removal of this action from the Circuit Court of Jefferson County, Alabama, and to enter such orders as may be necessary to obtain a true record of such proceedings as may have been had in the Circuit Court of Jefferson County, Alabama.

Respectfully submitted,

MATTHEW W. ROBINETT ASB-3523-172M
WILLIAM C. WOOD ASB-2689-DA4W
NORMAN, WOOD, KENDRICK & TURNER
Financial Center, Suite 1600
505 20th Street North
Birmingham, AL  35203
Telephone:  (205) 328-6643
Fax:  (205) 251-5479
E-mail:  wood@nwkt.com
E-mail:  mrobinett@nwkt.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on all counsel of record by placing a copy of same in the U.S. mail, postage prepaid and properly addressed on this the ___ dad of November, 2005, as follows:

Elizabeth Marie Kammer
2320 Arlington Avenue
Birmingham, AL  35205

BY_____

CV05 5936

| State of Alabama Unified Judicial System | **COVER SHEET CIRCUIT COURT - CIVIL CASE** (Not For Domestic Relations Cases) | Case ber C V ☐☐☐☐ ☐☐☐☐ ☐☐ . ☐☐ |
|---|---|---|
| Form ARCivP-93   Rev. 5/99 | | Date of Filing: ☐☐ ☐☐ ☐☐☐☐   Judge Code: ☐☐☐☐☐ Month  Day  Year |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF __Jefferson__ , **ALABAMA**
(Name of County)

__Sherlee Ginsberg & Bernard Ginster's Ledic Realty Management__
Plaintiff

__C-K Breckenridge, CLIC management corp et al.__
Defendant

**First Plaintiff**  ☐ Business  ☒ Individual  ☐ Government  ☐ Other

**First Defendant**  ☒ Business  ☐ Individual  ☐ Government  ☐ Other

---

**NATURE OF SUIT:** Select primary cause of action, by checking box *(check only one)* that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☒ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☒ TBFM - Fraud/Bad Faith/Misrepresentation
☒ TOXX - Other: Outrage Nuisance

**TORTS: PROPERTY INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☒ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellanous Circuit Civil Case

FILED IN OFFICE
ANNE-MARIE ADAMS
Clerk
OCT 0 5 2005

---

**ORIGIN** *(check one):*  F ☒ INITIAL FILING    A ☐ APPEAL FROM DISTRICT COURT    O ☐ OTHER: _____
R ☐ REMANDED    T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**  ☒ YES  ☐ NO

**Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P., for procedure)

---

**RELIEF REQUESTED:**  ☒ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:** K A M 0 0 3

Date: 10/05/05

Signature of Attorney/Party filing this form

EXHIBIT A

---

**MEDIATION REQUESTED:**  ☐ YES  ☐ NO  ☒ UNDECIDED

*17/14 for CK Breckenridge*

FILED IN OFFICE
ANNE-MARIE ADAMS
Clerk
OCT 0 5 2005

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
TENTH JUDICIAL CIRCUIT
CIVIL DIVISION**

| | |
|---|---|
| SHERLEE GINSBERG,<br>BERNARD GINSBERG,<br><br>PLAINTIFFS<br><br>v.<br><br>LEDIC REALTY MANAGEMENT<br>SERVICES, INC.,<br>C-K BRECKENRIDGE, LLC,<br>CLK MANAGEMENT CORP., and et al.,<br><br>DEFENDANTS. | Civil Action No: **CV05 5936** |

## SUMMONS

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED by either Rules 4.1 (b) (2) or 4.2 (b) (2) or 4.4 (b) (2) of the Alabama Rules of Civil Procedure to effect service.**

You are hereby commanded to serve this Summons, Notice to Take Deposition, Interrogatories, Request for Production of Documents, and a copy of the Complaint in this action on the following Defendants:

**LEDIC REALTY MANAGEMENT SERVICES, INC.
C/O THE CORPORATION COMPANY
2000 INTERSTATE PARK DR., STE. 204
MONTGOMERY, AL 36109**

**C-K BRECKENRIDGE, LLC.
CLK MANAGEMENT CORP.
C/O NATIONAL REGISTERED AGENTS, INC.
150 SOUTH PERRY ST.
MONTGOMERY, AL 36104**

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
TENTH JUDICIAL CIRCUIT
CIVIL DIVISION

FILED IN OFFICE

ANNE-MARIE ADAMS
Clerk

OCT 0 5 2005

| | |
|---|---|
| SHERLEE GINSBERG, | ) |
| BERNARD GINSBERG, | ) |
| | ) |
| PLAINTIFFS, | ) |
| | ) |
| v. | )   Civil Action No.: ___CV05  5936 |
| | ) |
| LEDIC REALTY MANAGEMENT | ) |
| SERVICES, INC., C-K | ) |
| BRECKENRIDGE, LLC., CLK | ) |
| MANAGEMENT CORP., and | ) |
| Defendants, A; B; C; being the persons, | ) |
| firms, corporations, organizations or | ) |
| entities which owned or exercised control | ) |
| over Breckenridge Apartments on the | ) |
| occasion made the basis of this suit; | ) |
| D; E; F;, being the persons, firms, | ) |
| corporations, organizations or entities | ) |
| who supervised and retained control over | ) |
| the management of Breckenridge | ) |
| Apartments on the occasion made | ) |
| the basis of this suit. All of whose | ) |
| names are unknown at this time but | ) |
| will be substituted by amendment | ) |
| when ascertained, | ) |
| | ) |
| DEFENDANTS. | ) |

## COMPLAINT

COME NOW, the Plaintiffs, Sherlee Ginsberg and Bernard Ginsberg, and file this

complaint against the Defendants, LEDIC Realty Management Services, Inc.,

C-K Breckenridge, LLC., CLK Management Corp., and Defendants, A, B, C, D, E, F, and, for

cause would show unto the Court as follows, to-wit:

1

1. The Plaintiffs, Sherlee Ginsberg and Bernard Ginsberg, at all times relevant hereto, are adult citizens of the State of Alabama and reside in Jefferson County.

2. The Defendant, LEDIC Realty Management Services, Inc., at all times relevant hereto, is: a corporation incorporated under the laws of the State of Texas and is authorized to do business as a foreign corporation in this State, and is subject to service of process by and through its registered agent: The Corporation Company, 2000 Interstate Park Dr. Ste. 204, Montgomery, AL 36109.

3. The Defendant, LEDIC Realty Management Services, Inc., at all times relevant hereto, is the corporation responsible for the management of Breckenridge Apartments.

4. The Defendant, C-K Breckenridge, LLC, at all times relevant hereto, is: a corporation incorporated under the laws of the State of Delaware with a principle address at c/o CLK Management Corp., 9 Park Place, Great Neck, NY 11021. Defendant, C-K Breckenridge, LLC., is authorized to do business as a foreign corporation in this State, and is subject to service of process by and through its registered agent: National Registered Agents, Inc., 150 South Perry St., Montgomery, AL 36104.

5. The Defendant, C-K Breckenridge, LLC and/or CLK Management Corp., at all times relevant hereto, owned and exercised control over Breckeridge Apartments.

6. Defendants, A, B, C, D, E, and F, are those persons, firms, corporations, organizations or entities which owned or exercised control over Breckenridge Apartments or who supervised or retained control over the management of Breckenridge Apartments.

7. The true names and/or legal identities of A, B, C, D, E, and F, are unknown to the Plaintiffs at this time but will be added by amendment when ascertained, individually and jointly,

2

all of whom are liable to the Plaintiffs as set forth in this Complaint.

8. On October 10, 2003, the Plaintiffs entered into a written lease with the Defendants, pursuant to which the Defendants leased to the Plaintiffs an apartment, designated as Apartment No. 05, in the apartment building situated on 3216 Bearden Place, Birmingham, Alabama 35243, for a term of one year, commencing on October 10, 2003, for a monthly rental of $715.00, at a pro-rated amount of $507.00. A copy of said lease is attached hereto as Exhibit A and incorporated herein by reference.

## COUNT I

### (Breach of Contract)

9. Plaintiffs reaffirm and adopt paragraphs 1 - 8, as if fully set forth herein.

10. On the 10th day of October, 2003, Plaintiffs and Defendants entered into an agreement, a copy of which is attached hereto as Exhibit A.

11. Defendant breached said agreement by continuing to allow other tenants to infringe upon Plaintiffs' contractual right of a covenant of quiet enjoyment.

12. Plaintiffs' contractual rights were violated through the fall of 2003 until October 24, 2005, by tenants occupying Breckenridge Apartment No. 6. The following are examples of the disturbances which Plaintiffs endured throughout the year: tenants relentlessly playing heavy metal music until the early morning, late night exercising which caused Plaintiffs' windows to rattle and walls to creak, and slamming of doors during all hours of the night. Defendants were made aware of the noise disturbances through fourteen faxes sent from December 15, 2003 to July of 2004.

3

13. As a proximate consequence of Defendants' breach of contract, the Plaintiffs, were caused to suffer the following damages:

> In October 2004, Bernard Ginsberg resided in the hospital for six days due to a stroke caused by emotional distress and had a stent placed in his heart. In November 2004, once again due to emotional and financial stress, Bernard Ginsberg spent three weeks in the hospital because of a Gastro intestinal bleed which resulted in renal failure and chest pains. After hospitalization, Mr. Ginsberg resided at Lakeshore Rehab for another three weeks. In January 2005, the Plaintiff was taken by emergency transport to the Veterans Hospital. The Plaintiff, Sherelee Ginsberg, pulled a muscle in her groin due to a hurried attempt to vacate the apartment. The Defendants caused the Plaintiffs to suffer great pain, both mentally and physically, which resulted in permanent injuries.

> In addition, the Plaintiffs were forced to relocate in October of 2004, the disabled Plaintiffs had to pay movers and suffered other costs associated with evacuation.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount which the jury finds to be reasonable and justifiable under the circumstances, but avers that the claim is for more than $10,000.00, plus interest and costs.

## COUNT TWO

### (Negligence)

14. Plaintiffs reaffirm and adopt paragraphs 1 - 13, as if fully set forth herein.

15. Defendants had a duty through the landlord-tenant relationship and were negligent in allowing the noise infractions to continue, in that they knew, or, in the exercise of reasonable care, should have known, that the continuous occurrence of the disturbances would cause physical distress to the Plaintiffs.

4

16.  As a proximate cause of such negligent conduct by the Defendants, the Plaintiffs were caused to suffer damages described in Paragraph Thirteen of Count One herein, which is incorporated herein by reference.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount which the jury finds to be reasonable and justifiable for compensatory and punitive damages, but avers that the claim is for more than $10,000.00, plus interest and costs.

## COUNT THREE

### (Misrepresentation and/or Suppression)

17.  Plaintiffs reaffirm and adopt paragraphs 1 - 16, as if fully set forth herein.

18.  Plaintiffs allege that the Defendants misrepresented or suppressed material facts concerning prior disturbances caused by the tenants residing in Breckenridge Apartment No. 06 which Defendants had a duty to and were obligated to communicate to the Plaintiffs before they entered into the lease agreement.

19.  Plaintiffs allege that the Defendants had superior knowledge in the matter which was not shared by the Plaintiffs, and that Defendants seized upon Plaintiffs' lack of knowledge and elderly status.

20.  As a proximate consequence of such misrepresentation and/or suppression by the Defendants, the Plaintiffs were caused to suffer damages described in Paragraph Thirteen of Count One herein, which is incorporated herein by reference.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount which the jury finds to be reasonable and justifiable for compensatory

5

and punitive damages, but avers that the claim is for more than $10,000.00, plus interest and costs.

## COUNT FOUR

### (Outrage)

21. Plaintiffs reaffirm and adopt paragraphs 1 - 20, as if fully set forth herein.

22. On or about December of 2003, the Defendants informed the tenants occupying Breckenridge Apartment No. 06 that the Plaintiffs had continuously complained about the noise disturbances. This action was against the request of Sherelee Ginsberg who asked that her identity remain unrevealed due to a fear of retribution. The Plaintiffs' fears were justified because soon after the complaint, the Apt. No. 06 residents began beating on the Ginsbergs' door and ringing the doorbell throughout the night. The Defendants were made aware of the situation and did nothing to stop the aggressive behavior directed towards the elderly Plaintiffs.

23. Defendants' said actions toward the Plaintiffs were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and are atrocious and utterly intolerable in a civilized society.

24. The emotional distress that the Defendants caused the Plaintiffs to suffer were so severe that no reasonable person could be expected to endure it.

25. As a proximate cause of such outrageous conduct by the Defendants, the Plaintiffs were caused to suffer damages described in Paragraph Thirteen of Count One herein, which is incorporated herein by reference.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount which the jury finds to be reasonable and justifiable for compensatory

6

and punitive damages, but avers that the claim is for more than $10,000.00, plus interest and costs.

## COUNT FIVE

### (Nuisance)

26. Plaintiffs reaffirm and adopt paragraphs 1 - 25, as if fully set forth herein.

27. The Defendants were made aware of the Apartment No. 06 tenants' hurtful, inconveniencing and damaging conduct. The Defendants refused to either evict the residents or otherwise prevent its reoccurrence, thereby, encouraging the intolerable actions by complacence and acquiescence.

28. As a proximate consequence of such conduct by the Defendants, the Plaintiffs were caused to suffer damages described in Paragraph Thirteen of Count One herein, which is incorporated herein by reference.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount which the jury finds to be reasonable and justifiable for compensatory and punitive damages, but avers that the claim is for more than $10,000.00, plus interest and costs.

7

## PLAINTIFFS DEMAND TRIAL BY STRUCK JURY!

RESPECTFULLY SUBMITTED,

*[signature]*

ELIZABETH KAMMER
ATTORNEY FOR THE PLAINTIFFS
2320 ARLINGTON AVENUE
BIRMINGHAM, ALABAMA 35205
205-930-9800

DATE: October 04, 2005

## PLEASE SERVE COMPLAINT WITH SUMMONS

SERVE DEFENDANTS AT:

LEDIC REALTY MANAGEMENT SERVICES, INC.
C/O THE CORPORATION COMPANY
2000 INTERSTATE PARK DR., STE. 204
MONTGOMERY, AL 36109

C-K BRECKENRIDGE, LLC.
CLK MANAGEMENT CORP.
C/O NATIONAL REGISTERED AGENTS, INC.
150 SOUTH PERRY ST.
MONTGOMERY, AL 36104

8

APARTMENT LEASE **PLAINTIFFS' EXHIBIT A**

**1. PARTIES:** THIS LEASE made this 10th day of October, 20 03

between C. K. Breckenridge, LLC. (hereinafter referred to as Lessor)

and Bernard and/or Sherlee Ginsberg (hereinafter referred to as Lessee).

WITNESSETH:

That in consideration of the representations made in the application filed by the Lessee and the conditions and covenants herein set forth, the Lessor hereby leases to the Lessee the following described property:

**2. PREMISES:** Apartment No. 05 at (address) 3216 Bearden Place in

(City) Birmingham, (State) Alabama, Zip Code 35243 for use by Lessee as a private residence only.

**3. TERM:** This lease is for a term of Twelve months, Twentytwo days, commencing on the 10th day of October, 20 03 and ending on the last calendar day of October, 20 04.

**4. RENT:** The Lessee agrees to pay the total amount of Eight Thousand Five Hundred Eighty Dollars ($ 8,580.00) Dollars, payable in monthly installments of Seven Hundred Fifteen dollars ($ 715.00) Dollars, each to be due and payable, respectively on the November 1st, 20 03, and on the first day of each month thereafter. All rental payments are to be paid at the Resident Manager's Office or such place as Lessor may designate. Such rental payment is to be made by check, money order or bank cashier's check. CASH IS NOT ACCEPTABLE FOR ANY PAYMENTS DUE. Should the Lessee fail to pay rents as they fall due or violate any of the conditions of the lease, or should there be any misstatement or untruth in the application made by the Lessee, the Lessee's possessory interest in the demised premises shall be terminated on the day that the rent first becomes delinquent, the day any violations of the lease occur, or the day there is any misstatement or untruth made in the application. The Lessee agrees that no further notice of termination of his possessory interest shall be necessary in that the Lessor may take action to reenter the premises by filing only one 24 hour notice in accordance with the unlawful detainer procedures of the State of Alabama.

**5. PRO-RATED RENT:** It is understood and agreed that Lessee is taking possession of the premises on the 10th day of October, 20 03, and is to pay the sum of Five Hundred Seven Dollars ($ 507.00) Dollars, as rent, from that day through the last day of October, 20 03.

**6. DEPOSITS:** At the time of execution of this lease Lessee has deposited with Lessor, the receipt of which is hereby acknowledged, the sum of Two Hundred Dollars ($ 200.00) Dollars Security Deposit which is to be held by Lessor as a guarantee for the full and faithful performance of all the terms and conditions of the Lease by Lessee. THIS DEPOSIT IS NOT RENT AND SHALL NEVER BE APPLIED BY THE LESSEE AS PAYMENT IN WHOLE OR IN PART OF ANY RENTAL PAYMENTS DUE UNDER THE LEASE. In the event of any violation of the terms of this lease by the Lessee, this security deposit, or a portion thereof, may be retained and offset against any damages due lessor.

**SECURITY DEPOSIT RETURN:** The Lessor shall not be obligated to release the Security Deposit unless the following conditions are met:
1. Full term of lease has expired.
2. Thirty days written notice was given by the Lessee to the Lessor.
3. No damage to property beyond normal wear and tear.
4. Entire apartment, including range, exhaust fan, refrigerator, bathrooms, closets and cabinets are clean. Refrigerator is to be defrosted.
5. No stickers or scratches or holes in walls.
6. No damage to carpet beyond normal wear and tear.
7. No unpaid charges or rent.
8. All keys are returned.
9. All debris and rubbish and discards placed in proper rubbish containers.
10. Forwarding address left with management.

(Initials)

**CHARGES AGAINST DEPOSIT:** At the expiration of the term of this lease, the balance, if any, of said security deposit will be returned to Lessee after deducting therefrom any unpaid rent and / or the following charges or damages, if in the discretion of Lessor such charges are necessary in order to put the leased premises in suitable condition for occupancy by a subsequent lease:

(a) Apartment cleaning charge of THIRTY-FIVE AND NO/100 ($35) DOLLARS.
(b) A stove cleaning charge of TWENTY-FIVE AND NO/100 ($25) DOLLARS.
(c) A refrigerator cleaning charge of TWENTY-FIVE AND NO/100 ($25) DOLLARS.
(d) The reasonable cost of repairing any damage to the premises, furnishings, or equipment, or the cost of the replacement of any furnishings or equipment removed from the premises or damage beyond repair.
(e) Apartment keys not returned — TWENTY FIVE AND NO/100 ($25) DOLLARS.
(f) Spray for fleas, per application — TWENTY-FIVE AND NO/100 ($25) DOLLARS.

In the event the above deductions exceed the amount of the security deposit the excess shall promptly become due and payable from the Lessee.

**7. PET PROVISIONS:** (A) IT IS HEREBY AGREED TO AND UNDERSTOOD THAT THE LESSEE DOES/DOES NOT HAVE A PET UPON TAKING OCCUPANCY. IF THE LESSEE DOES HAVE A PET, THE FOLLOWING PROVISIONS WILL APPLY:

(1) The Lessee may have no more than two pets. If Lessee has two pets, the "Pet" referred to in this lease agreement applies to each pet. The Lessee agrees that only the pet(s) described and named below and which has been approved by the manager can occupy the premises. No additional or different pet is authorized under this agreement. Acceptable pets are defined as dogs, cats, birds and fish.

(2) The Lessee agrees that pet will be kept inside apartment at all times except when on a leash and accompanied by the Lessee. Lessee will not have pet unattended on the patio or balcony.

(3) Pet(s) will not cause: Danger, damage, nuisance, noise, health hazard, or soil the apartment, premises, grounds, common areas, walks, parking areas, landscaping or gardens. Lessee agrees to clean up after the pet and agrees to accept full responsibility and liability for any damage, injury or actions arising from or caused by his pet(s). The Lessee agrees that if pet becomes annoying, bothersome, or in any way a nuisance to other Lessees or to the apartment operation, the Lessee will immediately upon notice from the Lessor remove pet from the premises or vacate the apartment.

(4) The Lessee agrees to pay the Lessor a NON-REFUNDABLE PET FEE in the amount of $ n/a per pet. The Fee does not apply toward damages created by said pet(s).

(Initials)

(5) In the case of a visiting pet, defined as a pet owned by someone other than the Lessee, a pet fee will be required. In the event the Lessee vacates the premises, and evidence of a pet is found in the leased premises, the Lessee will be charged an amount equal to the current pet fee.

(6) Lessee agrees to register the pet(s) in accordance with local laws and requirements. Lessee agrees to immunize the pet(s) in accordance with local laws and requirements.

(7) At the Lessee's expense, a chemical treatment for fleas will be done after Lessee vacates said premises.

(8) Lessee warrants that the pet(s) is housebroken. Lessee warrants that the pet(s) has no history of causing physical harm to persons or property, such as biting, scratching, chewing, etc., and further warrants that the pet(s) has no vicious history or tendencies.

Type of Pet: n/a    Weight: n/a    Breed: n/a

Color: n/a    Tag No.: n/a

B. IN THE EVENT THE LESSEE DOES NOT HAVE A PET UPON MOVING IN, THE FOLLOWING PROVISIONS WILL APPLY:

Should the Lessee desire to have an acceptable pet to reside on the premises, simultaneous with the pet acquisition, notification to the Lessor will be required for the approval of such pet. Such a pet will be allowed providing the following conditions are met:

(1.) The pet meets the size limitations established by the Lessor, is registered in the office of the Lessor.

(2.) The Lessee acknowledges that he will comply with the guidelines established by the Lessor regarding pets.

(3.) A NON-REFUNDABLE PET FEE OF $ 200.00 per pet is remitted to the Lessor. $200 pet deposit per pet. If pet is found that is not registered and/or fee has not been paid, then the Lessee understands that the pet fee will become and one-half times that of the current fee or $ 300.00, plus any accrued damages. The total will be due immediately upon demand.

Failure to meet this demand shall result in default of the lease, at which time the remedies in the lease, specifically in the paragraph subtitled "Default" will be pursued.

**8. CANCELLATION OPTION:** Should Lessee desire to terminate the terms of this Lease prior to the expiration thereof, for any reason other than default of the Lessee, Lessor shall have the right, at Lessor's sole discretion and option, to permit such early termination of this Lease, provided that the following conditions are met: (1) Lessee, provides a thirty (30) day written notice stating he wishes to terminate his lease early. (2) Lessee pays to Lessor as liquidated damages the parties hereto agreeing that such damages to Lessor from termination are impossible to ascertain at this date, but that the amount described herein would fairly compensate Lessor for such expected damages and represent a reasonable estimation thereof prior to the date of cancellation an amount equal to the lease of () Seven Hundred Fifteen Dollars ($ 715.00) dollars, plus the security deposit. (3) All rents due through the date of termination must be paid prior to vacating the premises. (4) The premises will be left in good clean condition with no damages, ordinary wear and tear excepted. (5) If all these conditions are not met, the Lessor will consider the full lease term in effect and will pursue all legal remedies provided for by the lease.

(Initials)

**9. LATE CHARGES AND RETURNED CHECKS:** The Lessee agrees to pay a late charge of $ __10% of mo. rent__  in the event that the monthly installments are not received by the fifth (5th) day of each month. REGARDLESS OF THE DAY OF THE WEEK ON WHICH THE FIRST(1st) MAY OCCUR AND REGARDLESS OF WHETHER THE FIRST (1st) IS A HOLIDAY OR OTHER NON-BUSINESS DAY, RENT WILL BE CONSIDERED DELINQUENT IF RECEIVED AFTER THE FIRST (1st) DAY OF THE MONTH. A night drop has been provided at the office of the Lessor for the convenience of the Lessee for the holiday and afterhours delivery of the rent.

If the Lessor is given a check and said check is not honored in presentation for any reason whatsoever, Lessee agrees to pay a bad check charge of $ __40.00__ in addition to any late charge.

**10. OCCUPANTS:** The Lessee agrees that the premises are to be occupied only by those persons specifically named herein: _____

__Bernard and Sherlee Ginsberg__

If any other person resides with the Lessee without prior written authorization from the Lessor, the Lessor has the right to declare the lease in default. The Lessee further agrees that the above-demised premises cannot be assigned or sublet by said Lessee either in whole or in part. The Lessee recognizes that the Lessor must be in a direct Lessor-Lessee relationship and that a subletting or an assignment would complicate the Lessor's dealings. The Lessee shall not have the right to request subletting or assignment.

**11. OCCUPANCY:** Should the Lessee be unable to obtain possession of the date of the lease term because of delays of the Lessor, or by reasons of the holding over of any previous occupants of said premises, or if a building is to be constructed and workmen or contractors have not brought the building to a condition permitting occupancy, or should there by any other delay in granting possession, the Lessor shall not be liable in damages to the Lessee. If Lessee shall remain or continue to be in possession of the leased premises or by any part thereof after the termination of this Lease. Lessor shall, at this option have the right to charge Lessee as liquidated damages FIFTY AND NO/100 ($50) DOLLARS per day for the time such possession is withheld.

**12. STRUCTURAL DAMAGE:** If the leased premises are destroyed by fire, and such fire is due to the Lessee's fault or negligence, then in that event the monthly installments shall not abate.

If the leased premises, or the building in which the leased premises is located shall be damaged by fire or by other unforeseen event, without fault of the Lessee, then, and in that event, the Lessor shall have the option to decide whether the Lessor shall or shall not repair and restore said building or leased premises to their original shape; and if the Lessor decides to repair and restore the building or the rented premises as aforesaid, then, from the time such damages occurs until the repairs are completed, an equitable abatement of the monthly installments will be allowed. It is agreed, however, that if the damage is such as not to render the leased premises untenable for the purpose for which they are rented, then there shall be no abatement of the rent while the repairs are being made

Except for the normal hanging of pictures and wall decorations that do not deface wood, masonry or sheetrock surface, the Lessee shall not drive any nails or tacks or set any screws into any part of the apartment or building, or make any structural change, whatsoever without first obtaining the written consent of Lessor.

**13. DEFAULT:** Should the Lessee fail to pay rents as they fall due as aforesaid, or violate any of the conditions of this lease, or should there be any misstatement or untruth in the application made by the Lessee, the Lessor shall have the right at the Lessor's option to re-enter said premises and annul this lease. Such re-entry shall not bar the recovery of rents or damages for breach of the lease contract nor shall the receipt of rent after conditions are broken be deemed a waiver for forfeiture. In order to enable the Lessor to re-enter, it shall not be necessary in any notice of rent being due nor unpaid, nor to make demands for rent; the execution of the lease, signed by the parties thereto, while signing is hereby acknowledged, is sufficient notice of the rents due. Any law, usage, or custom to the contrary, notwithstanding.

And the Lessee further covenants and agrees should the Lessee violate any conditions of this lease, then in such case, the whole rent for the whole term of the lease shall at once become due and payable, at the option of the Lessor, and the Lessor may proceed by attachment, suit, or otherwise, to collect, the whole in the same manner, as if by the terms of this lease the whole rent for the entire term were payable in advance.

**14. TERMINATING LEASE:** If either the Lessee or the Lessor desires that this lease terminate at the expiration of its term, including month to month tenancy, one must give to the other WRITTEN NOTICE TO BE RECEIVED NOT LESS THAN THIRTY (30) DAYS PRIOR TO THE EXPIRATION OF THE LEASE TERM. If the written notice is given less than thirty (30) days prior to the expiration date, the Lessee's obligation to pay rent shall extend to the number of days required to fulfill the thirty (30) days notice period. The Lessor reserves the right to show the premises to intended Lessees and to display "FOR RENT" signs on said building or premises.

**15. AUTOMATIC RENEWAL:** Failure of either party to give proper termination notice will automatically renew this lease for an additional term on a MONTH-TO-MONTH basis, at the month-to-month rental rate as established by the Lessor, and under such circumstances, either the Lessor or the Lessee shall be required to give thirty (30) days written notice in order to terminate the lease. This notice may be given at any time; and if the notice period does not correspond with a full calendar month, the Lessee's final rent payment will be prorated in accordance with the number of days required to fulfill the notice period or the number of days the Lessee occupies the apartment unit, whichever is the longer.

**16. CHANGES IN LEASE PROVISIONS:** The Lessee further agrees that, unless otherwise provided herein, upon the termination of the initial term of the lease, the Lessor can make changes in the lease provisions after the initial term and during the period in which the lease is on a month-to-month basis by notifying the Lessee of such changes by sending a copy of said changes to the Lessee by regular mail, personal delivery or posting at least 30 days prior to the day of the change. Such changes will be binding upon the Lessee as long as the Lessee remains a tenant of the Lessor. This provision is a continuous one and will apply at the expiration of the original term and during each subsequent monthly term.

**17. ABANDONMENT:** The Lessee's absence from the premises for seven (7) consecutive days without prior written notice, during which time rent or other charges are delinquent, shall be deemed abandonment of the premises. Such abandonment will be deemed cause for immediate termination without notice, and the Lessor at its option may cancel the lease or re-enter and let the premises for such terms as may be immediately obtainable, and apply the net amount collected to the amount due hereunder by the Lessee. Re-entering and letting shall not relieve the Lessee of its obligation to pay amounts due under this lease.

**18. WARRANTY AND INDEMNITY:** It is further understood and agreed that the Lessor shall not be liable for any injury to person or damage to property which may occur on account of any defect in said leased premises or the premises of the apartment complex of which the leased premises are a part, including damages caused by rain, wind, broken pipes, failure of air conditioning or heating or other causes. The Lessee agrees and does hereby indemnify, protect and save harmless the Lessor from any loss, cost, damage or expense caused by or resulting from injuries to persons or property, while in, on, or about the premises herein leased. Any and all property of said Lessee which may be located or stored either in the demised premises or the apartment complex of which the demised premises form a part shall be at the sole risk of the Lessee. The Lessee waives any right of subrogation against the Lessor under any insurance policy and shall cause the Lessee's insurance carriers to waive the same. LESSEE FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT THE IMPORTANCE OF SECURING PERSONAL PROPERTY INSURANCE (RENTER'S INSURANCE) HAS BEEN EXPLAINED TO THE LESSEE AND IT IS UNDERSTOOD THAT IN THE EVENT OF A LOSS, THE PROPERTY'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE OF ANY PERSONAL ITEMS. LESSEE ACKNOWLEDGES THAT LESSEE HAS BEEN ADVISED TO SECURE RENTER'S INSURANCE. The Lessee hereby acknowledges the good condition of the leased premises and his acceptance of this lease is conclusive evidence that said premises are in good and satisfactory order and repair unless otherwise specified herein, and he agrees that no misrepresentation as to the condition of the premises has been made and no promise made to decorate, alter, repair, or improve the premises unless otherwise specified in writing.

**19. LIABILITY:** It is understood that no employee of the Lessor is furnished to provide any personal services to the Lessee, his family, employees or guests, and the Lessee agrees to relieve the Lessor and hold the Lessor harmless from any and all liability in connection with such service. By way of illustration, but not by way of limitation, no employee of the Lessor is authorized to perform any errand, porter, cleanup, valet, maid, babysitting, carpentry, handyman, garbage removal, trash or other services; and, in the event any such services are rendered, the Lessor shall not be liable in connection therewith, and the Lessee shall fully indemnify and save the Lessor harmless.

**20. TAXES, INSURANCE AND UTILITIES:** Lessee shall pay the public utility bills for said leased premises when and as the same severally become due, and make all required deposits with public utility companies, unless specifically included in the rent. Lessee acknowledges that if Lessor is currently paying for water and sewer service to the leased premises, without expense to Lessee, the Lessor shall have the right at any time during the term of this lease to install a water meter to measure service to the leased premises. If any such meter is installed, upon thirty (30) day written notice, Lessee shall thereafter be liable for paying for water and sewer charges for the leased premises in the same manner as prescribed above for any other public utilities, without reduction or abatement of rent. Lessee acknowledges that Lessee will be responsible for the meter deposit and application fee. The Lessor shall not be liable for any injury or damage whatsoever which may arise or accrue either upon its furnishing or its failure to furnish hot or cold water or air-conditioning or other utilities to the leased premises regardless of the cause or on account of any defect in the building or premises. The monthly rental figure contained hereinabove is based, in part, upon ad valorem tax rates, insurance rates, rental taxes, and public utility service rates existing at the time of the execution of this lease, and being paid by the Lessor. In the event of any increase or increases in the existing rates during the term of this lease the Lessor may, at its option, assess all of the Lessees in this apartment complex with a pro rata share of such increase. The Lessee's pro rata share shall be that portion of such increase equal to the product obtained by multiplying said excess by a fraction, the numerator of which shall be one and the denominator of which shall be the total number of apartment units in the development. The Lessee agrees to pay his or her pro rata share of such increase in monthly installments as additional rent hereunder commencing with the month following the date the Lessor must pay said increase. The Lessee agrees that if any taxing authority enacts a tax which is computed on the rent, then this tax shall be passed on to the Lessee as additional rent and the monthly rent shall be increased by the amount enacted by the taxing authority.

**21. EXCULPATORY AND RELEASE PROVISION:**

The Lessor (including its managing and leasing agents and its other agents, servants and employees) shall not be liable or responsible in any manner to the Lessee, or to any of the Lessee's spouse, children, guests, invitees, heirs, personal representatives, successors or assigns, or to any persons having interests in any property located on the premises or the complex of which the premises are a part, for personal injury (including death), property damage, property loss (including decrease in value of property), or any other type of loss or damage giving rise to any claim for damages or to any other type of claim whatsoever, which results from negligence and/or other fault, except willful misconduct, and which arises, in whole or in part, from any condition, accident or occurrence relating to the premises or the complex of which the premises are a part, including: any defective or other condition in buildings, equipment, improvements, appurtenances, storages areas, swimming pool facilities, other facilities, and common areas, and including latent and patent conditions, whether known or unknown, and whether now existing or later developing; conditions relating to plumbing, heating, air-conditioning, and equipment, appliances, facilities or machinery, whether in proper working order resulting from acts of God and the elements, including wind, rain, hail, snow, storms, floods, and earthquakes; conditions relating to repair, alteration or replacement work performed by or on behalf of the Lessor, or relating to circumstances delaying or preventing such work from being performed; conditions relating to theft, burglary, vandalism, acts of violence, other acts of third-parties, acts of other Lessees of the complex, and any acts or matters relating to security; and any conditions or circumstances relating to any services or undertakings provided by the Lessor or by anyone acting on behalf of the Lessor.

This provision was specifically called to my attention. I understand the provision. I agree that the provision is valid and binding.

(Initials)

AND THE LESSEE ACKNOWLEDGES THAT THE PROVISIONS OF THE PRIOR PARAGRAPH, WHICH LIMIT THE LIABILITY OF THE LESSOR (INCLUDING ITS MANAGING AND LEASING AGENTS AND ITS OTHER AGENTS, SERVANTS AND EMPLOYEES) WERE BARGAINED FOR BETWEEN THE LESSEE AND THE LESSOR, AND THAT THE RENT WOULD BE INCREASED IF THIS PROVISION WERE NOT IN THE LEASE.

**22. ATTORNEY'S FEES AND COURT COSTS:**

In the event of employment of an attorney for the collection of any amount due hereunder, or for the institution of any suit for the possession of said property, the Lessee shall pay and shall be taxed with the reasonable attorney's fees, or any other expenses incurred by Lessor which shall be a part of the debt evidenced and secured by this lease.

**23. RULES AND REGULATIONS:**

The Lessee agrees to comply with and to cause the Lessee's guests and family members to comply with the rules and regulations for the complex that may exist from time to time; and the Lessee agrees that the rules and regulations may be amended from time to time by the Lessor and notice of such amendments rules and regulations shall be sufficiently given by posting a copy thereof on the door of the leased premises. IT IS AGREED THAT THE VIOLATION OF ANY SUCH RULES AND REGULATIONS BY THE LESSEE OR ANY OF THE LESSEE'S GUESTS OR FAMILY MEMBERS SHALL CONSTITUTE A DEFAULT IN THE TERMS OF THIS LEASE. The Lessee hereby agrees to be bound by the following:

1. Notices: All complaints and requests shall be made to the Manager during normal business hours. The Lessee shall also give immediate notice to Manager of any accident, property damage or injury.

2. Moving: Moving of furniture and other bulky articles other than within the Lessee's own apartment shall be conducted on the premises only after the consent of the Lessor is first obtained. Any damage to the building or any property of the Lessor or to the person or any property of anyone else by the moving of articles in or out of the premises by the Lessee shall be paid for by the Lessee causing such damage.

3. Pets: Pets will not be permitted in the leased apartment UNLESS EXPRESS WRITTEN CONSENT OF THE LESSOR IS GIVEN as provided in paragraph 7 of this apartment lease.

4. Aerials: The Lessee agrees that no radio wires, or television aerials, or their appurtenances shall be placed on any building without the expressed written consent of the Lessor.

5. Guests: The Lessee shall be responsible for his guests and the action of the guests, including any damage done to the premises by any such guest. Persons shall not play in the halls or stairways of the leased premises or be allowed to create disturbances of any nature.

6. Noises: No Lessee shall make, or permit to be made by his family or guest, any disturbing noises or interfere in any way with rights of other residents or the operation of the property by the Lessor or its Agents. The volume of any stereo, radio, T.V., or musical instrument or any other noise or music reproduction device must be sufficiently reduced at all times so as not to disturb other occupants in the building. Vocal or instrument practice will not be conducted in or about the premises. The Lessor has the right and sole discretion to determine if the level of volume affects other occupants and can terminate this Lease if noise violations occur.

7. Inflammables and Explosives: Storage of kerosene, gasoline, butane or other bottled gases, or other inflammable or explosive agencies is prohibited inside the premises.

8. Sales: No yard or auction sales of any nature shall be permitted under any circumstances.

9. Waterbed: Waterbeds are only permitted WITH WRITTEN PERMISSION OF THE LESSOR. Such permission will be contingent upon the Lessee providing proof of adequate damage protection under apartment dweller's insurance coverage.

10. Locks and Keys: The Lessor will retain the pass key to each apartment, and Lessor reserves the right to enter the apartment in order to inspect the same. No Lessee shall alter any lock or install a new lock on any door leading into his apartment without the prior written permission of the Lessor. If such approval is given, the Lessee shall provide the Lessor with a key for the Lessor's use.

11. Sweeping: No Lessee shall sweep or throw or permit to be swept or thrown from the leased premises including patios, balconies, windows, and doorways, any dirt or other substances into any of the corridors, halls, or into the yard area or on the porch area of any other Lessee.

12. Repairs: The Lessor, his agent, his janitor, watchmen, and employees may enter the leased premises at any reasonable time to examine the same or make needed repairs to the premises, or to install or repair pipes, wires, and other appliances and items deemed by the Lessor essential to the use and occupation of other parts of the building.

13. Windows, Drapes and Blinds: Cleaning and maintenance of windows and glass doors are the Lessee's obligation. Foil on windows and glass doors is forbidden. Drapes or blinds which are furnished by the Lessor must be used. Should Lessee desire to use his own drapes/blinds, written permission of the Lessor is required. Personal drapes must have plain, off-white linings. Personal blinds must be ivory or off-white in color.

14. Appearance: The hanging of rugs, laundry, towels, mops or articles of clothing over the window sills or balcony rails is forbidden. Outside garbage containers other than those provided by the Lessor are forbidden on the demised premises. Bagged trash or recyclables are not to be left outside the door of the leased premises.

15. Light Bulbs: The Lessee agrees to replace all burned out light bulbs in his apartment.



16. Smoke Detector: All apartments are equipped with smoke detectors for the protection of the Lessee. These detectors should be tested monthly to assure their working condition and any problems should be immediately reported to the manager. In the case of battery operated smoke detectors, it is the responsibility of the Lessee to replace inoperable batteries.

17. Bicycles: Bicycles and skateboards are prohibited on sidewalks, tennis courts, courtyards or in pool area.

18. Vinyl Siding: Where vinyl siding is present on the exterior of the building, certain precautions are required. Bar-b-que grills must be kept at least TWO FEET away from the siding when in use. Hooks, screws and decorator items cannot be installed or attached to vinyl siding. Charges for replacement will be assessed to the Lessee if the siding is damaged.

19. Patios/Balconies: The patio or balcony of the apartment dwelling must be furnished with plants and appropriate patio furnishings only, and is not to be used as a storage room.

20. Alterations: No alterations, painting or redecorating of a permanent nature may be done to the apartment or balcony/patio.

21. Common Areas: Sidewalks, passageways, stairways, courtyards and other grounds shall not be obstructed by the Lessee, or used for any purpose other than ingress and egress to and from the premises. These unleased portions of the building are reserved to and under the exclusive control of the Lessor. This includes, but not limited to, hanging plants or items in breezeways or stairways and the planting of plants of any kind in the ground.

22. House Plants: Water tight containers or plastic plant trays should be used under all plants. Lessee will be responsible for replacing the carpet in an apartment if water stains are left in the carpet upon Lessee's vacating the premises. Water tight containers or plastic trays or pans should also be used under plants on upstairs balconies/patios to prevent water from leaking to the balcony/patio below.

There are other rules specific to the leased premises which may not be addressed in Section 23 titled "Rules and Regulations". The Lessor retains the right to enforce such rules as they may apply to this apartment complex.

**24. SWIMMING POOLS & OTHER AMENITIES:** The exculpatory provisions in paragraph 21 to this lease apply to any damage or injury to persons or property caused as a result of the use of the swimming pool and other amenities by the Lessee or any persons making use of said common areas through the use, permission, or consent of the Lessee. No children under the age of twelve (12) years of age will be allowed in or about the swimming pool area unless accompanied by an adult, and no child in diapers will be allowed use of the pool. Pool use hours will be posted at the pool area.

All common areas, such as the swimming pool, lodge, weight room, tennis courts or any other amenity, are private property for the use of Lessees only. The hours of operation shall be posted. Guests of Lessees must be limited to two (2) persons per apartment at any one time and they must be accompanied by a Lessee unless written permission to the contrary is given by the Manager. The current published regulations must be observed as to use of pool by residents and guests. The Lessee further agrees that only a greaseless style sun-tan lotion may be used and not an oil base sun-tan lotion; and further agrees that no ball playing, running or wrestling will be allowed in the pool or pool area.

Beverages brought to the pool area should be in containers other than glass. NO GLASSES, BOTTLES, GLASS CONTAINERS OR FOOD ARE ALLOWED IN THE POOL AREA. Other rules are to be observed as posted throughout the property from time to time by the Lessor.

**25. VEHICLES:** Motorcycles, including motorbikes and minibikes shall not be parked in the breezeways, hallways, patios, grass or lawn area. These will be parked in other areas specifically provided by the Lessor with care taken to protect the asphalt from damage caused by kick-stand or oil leakage. Riding of same on sidewalks or lawns is prohibited. Lessee shall not park nor permit Lessee's guest or invitees to park boats, mobile homes, recreational vehicles, commercial vans, trucks or other equipment in parking areas designated for automobiles or on the grass or in any other area on the premises without the written permission of the Lessor. Such vehicles can be towed away at the Lessee's expense. Parking is not assigned or reserved except where there is a garage or covered parking area. However parking areas are limited, and no Lessee shall park more than the number of vehicles allowed by Lessor on the premises at any time. The parking of additional vehicles would require written permission of the Lessor. Failure to obtain written permission shall be a violation of the conditions of this lease. There shall be no more than two (2) vehicles per a one bedroom apartment and no more than three (3) vehicles per a two or three bedroom apartment.

All vehicles parked in the parking lot by the Lessee, his guests, agents or invitees shall be operable and shall bear a current license plate. Vehicles shall be parked only in the paved areas provided for parking. THE LESSOR SHALL GIVE TO THE LESSEE THREE DAYS NOTICE TO REMOVE ANY INOPERABLE VEHICLE OR VEHICLE WITH AN EXPIRED LICENSE PLATE. IF THE LESSEE FAILS TO REMOVE THE VEHICLE, THE LESSOR SHALL REMOVE IT AT THE LESSEE'S EXPENSE. Inoperable includes flat tires and dead batteries.

IT IS EXPRESSLY PROHIBITED TO WORK ON OR REPAIR AN AUTOMOBILE OR MOTORCYCLE OR ANY OTHER TYPE VEHICLE ANYWHERE ON THE PREMISES. LIKEWISE, THE WASHING OF AUTOMOBILES OR MOTORCYCLES ON THE PREMISES IS NOT PERMITTED.

**26. NUISANCES:** The Lessee agrees to comply with all the laws and ordinances of the City in regard to nuisances insofar as the leased premises and the streets, alleys and premises of the Lessor around the same are concerned, and that the Lessee will by no act or omission render the Lessor liable for any violation of such City law or ordinance. Should the Lessee, his family or guest, fail to maintain a standard of behavior consistent with the consideration necessary to provide reasonable peace and quiet to other tenants, such as by being boisterous or disorderly, creating undue noise, disturbance or nuisance of any nature or kind, then at the option of the Lessor, the rent for the whole expired term of the lease shall at once become due and payable, and the Lessor shall have the further option to cancel this lease, and recover possession of the premises.

**27. DRUG FREE HOUSING:** The Lessee, any member of the Lessee's household, or a guest or other person on the Lessee's premises shall not engage in or shall not permit the premises to be used for, or to facilitate criminal activity on or near the premises, including, but not limited to violent criminal activity or drug-related criminal activity. "Violent criminal activity" means any felonious criminal activity that has one of its elements the use, attempted use, or threatened use of physical force against a person or property of another. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, or use, or possession with the intent to manufacture, sell distribute, or use of a controlled substance. Any such violation is grounds for termination of this lease and eviction from the premises.

**28. ENTIRE AGREEMENT:** This lease and the amendments, if any attached thereto and forming a part hereof, set forth all covenants, promises, conditions, and understanding between the Lessor or its agents and Lessee concerning the leased premises, and there are no covenants, promises, agreements, conditions, or understandings, either oral or written, between them other than herein set forth. No modification or limitation or extension of this lease will be binding unless in writing and signed by the Lessor or its Agents and the Lessee. The Lessor or its agents failure to act on any default on the part of the Lessee shall not be construed as a waiver thereof, nor shall any custom or practice that may be created between the parties in the course of administering this instrument be construed to waive or to lessen the right of the Lessor to insist upon the provisions hereof. It is understood that the terms "Lessor or its Agents" and "Lessee" are used in this agreement and they shall include the plural and shall apply to persons both male and female. All obligations of the Lessee are to be joint and severally. This lease, whether or not recorded, shall be junior and subordinate to any mortgage hereafter placed by the Lessor in the entire property of which the leased premises form a part.

**29. LESSOR'S CONSENT:** Whenever any action or any condition is prohibited or restricted under this lease unless the Lessor's consent is secured, or the Lessor's consent is required under this lease either expressly or by implication, the Lessee agrees that the Lessor's decision to consent or not need not be made in accordance with any particular criteria or commercial standards (including "reasonable commercial standards), that the Lessor may make its decision on the basis of any factors which seem relevant to the Lessor and that the Lessor's decision, for whatever reason, shall be conclusive and binding on the Lessee. The Lessor may condition the giving of its consent upon whatever requirements and conditions seem desirable to the Lessor regardless of whether the Lessor's position and / or the particular requirements and conditions accord with any particular criteria or commercial standards, including reasonable commercial standards.

**30. PARTIAL INVALIDITY:** If any section, clause, sentence, word or provision of this lease or the application thereof to any party or circumstances shall, to any extent, be or become invalid or illegal, and such provision shall thereby become null and void, the remainder of this lease shall not be affected thereby, and each remaining provision of this lease shall not be affected thereby, and each remaining provision of this lease shall be valid and enforceable to the fullest extent permitted by law.

**31. REITERATION:** The Lessee further agrees and acknowledges that Article 18 (WARRANTY AND INDEMNITY), Article 19 (LIABILITY) and Article 21 (EXCULPATORY AND RELEASE PROVISION), were specifically called to the Lessee's attention by the Lessor and were bargained for before the lease was signed and that the Lessee was informed and understood the meaning of these provisions and their legal effect prior to signing this lease, and that the rent would be increased if this provision were not in the lease.

READ YOUR LEASE BEFORE SIGNING

C-K Breckenridge, LLC.

_____ Lessor

_____ Bernard Ginsberg    Lessee

By: _____ Agent for Lessor
Susan Hughes
Property Manager

_____ Lessee

_____ Sherlee Ginsberg    Lessee

Rev. 6/97

```
| AVSO351                                                    CV 2005 005936.00 |
|                                                                             |
|                                            JUDGE: JOSEPH L. BOOHAKER         |
| --------------------------------------------------------------------------- |
|                      ALABAMA JUDICIAL DATA CENTER                            |
|                         CASE ACTION SUMMARY                                  |
|                            CIRCUIT CIVIL                                     |
| --------------------------------------------------------------------------- |
|   IN THE CIRCUIT  COURT OF JEFFERSON       COUNTY                            |
|                                                                             |
|    SHERLEE GINSBERG ET AL VS LEDIC REALTY MANAGEMENT SERVICES ET AL          |
|   FILED:  10/05/2005 TYPE: NEGLIGENCE-GENERAL   TYPE TRIAL: JURY      TRACK: |
|                                                                             |
| *********************************************************************** |
|   DATE1:          CA:                    CA DATE:                            |
|   DATE2:          AMT:            $.00   PAYMENT:                            |
|   DATE3:                                                                     |
| *********************************************************************** |
|   PLAINTIFF   001: GINSBERG SHERLEE                                          |
|                                        ATTORNEY: KAMMER ELIZABETH MARIE      |
|                                        KAM003    2320 ARLINGTON AVENUE       |
|                     , AL   00000-0000                                        |
|                     PHONE: (205)000-0000            BIRMINGHAM, AL   35205   |
|   ENTERED:  10/05/2005 ISSUED:         TYPE:                 (205)930-9800   |
|   SERVED:              ANSWERED:        JUDGEMENT:                           |
| --------------------------------------------------------------------------- |
|   PLAINTIFF   002: GINSBERG BERNARD                                          |
|                                        ATTORNEY: KAMMER ELIZABETH MARIE      |
|                                        KAM003                                |
|                     , AL   00000-0000                                        |
|                     PHONE: (205)000-0000                                     |
|   ENTERED:  10/05/2005 ISSUED:         TYPE:                                 |
|   SERVED:              ANSWERED:        JUDGEMENT:                           |
| --------------------------------------------------------------------------- |
|   DEFENDANT   001: LEDIC REALTY MANAGEMENT SERVICES INC                      |
|                     % THE CORP CO-SUITE 204   ATTORNEY: *** PRO SE ***       |
|                     2000 INTERSTATE PK DR                                    |
|                     MONTGOMERY, AL   36109-0000                              |
|                     PHONE: (205)000-0000                                     |
|   ENTERED:  10/05/2005 ISSUED:  10/07/2005 TYPE:    SHERIFF                  |
|   SERVED:  10/18/2005  ANSWERED:        JUDGEMENT:                           |
| --------------------------------------------------------------------------- |
|   DEFENDANT   002: C-K BRECKENRIDGE LLC                                      |
|                     CLK MANAGEMENT CORP        ATTORNEY: *** PRO SE ***      |
|                     150 SOUTH PERRY ST                                       |
|                     MONTGOMERY, AL   36104-0000                              |
|                     PHONE: (205)000-0000                                     |
|   ENTERED:  10/05/2005 ISSUED:  10/07/2005 TYPE:    SHERIFF                  |
|   SERVED:  10/14/2005  ANSWERED:        JUDGEMENT:                           |
| --------------------------------------------------------------------------- |
|                                                                             |
|                  S&C/INTGS/REQ PROD/NOTICE TAKING DEPOS                      |
|                                                                             |
|    10/05/2005    FILED THIS DATE: 10/05/2005                (AV01)           |
|                                                                             |
|    10/05/2005    ORIGIN: INITIAL FILING                     (AV01)          |
|                                                                             |
|    10/05/2005    ASSIGNED TO JUDGE: JOSEPH L. BOOHAKER      (AV01)           |
|                                                                             |
|    10/05/2005    JURY TRIAL REQUESTED                       (AV01)          |
|                                                                             |
|    10/05/2005    CASE ASSIGNED STATUS OF: ACTIVE            (AV01)           |
|                                                                             |
|    10/05/2005    GINSBERG SHERLEE ADDED AS C001             (AV02)          |
|                                                                             |
|    10/05/2005    LISTED AS ATTORNEY FOR C001: KAMMER ELIZABETH MAR           |
|                                                                             |
|    10/05/2005    GINSBERG BERNARD ADDED AS C002             (AV02)          |
|                                                                             |
|    10/05/2005    LISTED AS ATTORNEY FOR C002: KAMMER ELIZABETH MAR           |
|                                                                             |
| --------------------------------------------------------------------------- |
| ELW   10/31/2005                                       CV 2005 005936.00    |
```

```
AVSO351                    )                      )      CV 2005 005936.00

   10/05/2005    C-K BRECKENRIDGE LLC ADDED AS D002        (AV02)

   10/05/2005    LISTED AS ATTORNEY FOR D002: PRO SE       (AV02)

   10/05/2005    CASE ACTION SUMMARY PRINTED               (AV02)

   10/07/2005    SERVICE ORDER SENT TO D001

   10/07/2005    SERVICE ORDER SENT TO D002

   10/26/2005    SERVICE OF SERVED PERSON ON 10/14/2005 FOR D002

   10/31/2005    SERVICE OF SERVED PERSON ON 10/18/2005 FOR D001
```

ELW    10/31/2005                                      CV 2005 005936.00

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA, FILED IN OFFICE
TENTH JUDICIAL CIRCUIT
CIVIL DIVISION

ANNE-MARIE ADAMS
Clerk

OCT 0 5 2005

SHERLEE GINSBERG,              )
BERNARD GINSBERG,              )
                               )
     PLAINTIFFS,               )
                               )
v.                             )      Civil Action No.: _____ CV05 5936
                               )
LEDIC REALTY MANAGEMENT        )
SERVICES, INC., C-K            )
BRECKENRIDGE, LLC., CLK        )
MANAGEMENT CORP., et al.       )
                               )
     DEFENDANTS.               )

<u>PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS</u>

COME NOW, the Plaintiffs and propound the following interrogatories in the above

styled action and request the Defendants to respond within forty-five (45) days of the service

hereof:

<u>INSTRUCTIONS</u>

a. Whenever an interrogatory may be answered by referring to a writing, the writing may

be attached as an exhibit to the response and referred to in the response. If the writing has more

than one page, refer to the section where the answer to the interrogatory can be found.

b. Whenever an address and telephone number for the same person are requested in

more than one interrogatory, you are required to furnish them in answering only the first

interrogatory asking for that information.

c. In answering these interrogatories, you are not limited to your own personal

1

knowledge, but you are required to furnish all information available to you or anyone acting on your behalf.

d. If it is maintained in response to any of these interrogatories are subject to the work product privilege, attorney-client privilege, or any other confidentiality or privilege claim, then provide a concise statement of the grounds upon which such claim of privilege is asserted, and if such a claim involves a Document, then identify the general nature of any such Document, the identity and position of its author, the date it was written, and the identity and positions of all recipients.

e. Your obligation to supplement your response to these interrogatories continues until the date of trial.

## DEFINITIONS

a. "Incident" includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

b. "You or Anyone Acting On Your Behalf" includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

c. "Defendant(s)," "it," "you" or "your," unless otherwise indicated, refers to Ledic Realty Management Services, Inc., C-K Breckenridge, LLC., CLK Management Corp., et al, and its officers, directors, volunteer workers, employees, affiliates, servants, attorneys, agents, and others who are in possession of, or may have information for or on behalf of the Defendant(s).

e. "Plaintiff(s)" refers to Sherlee Ginsberg and Bernard Ginsberg.

2

f.  "Person" refers to any individual, public, or private corporation, proprietorship, partnership, association, government agency, political subdivision, group or other business, public, private or semi-private organization.

g.  To "Identify a Person" shall mean to provide: if a natural person, his or her name and last known complete address, including zip cope, last known complete phone number, their current occupation, business address and telephone number, and the last known business address of his or her employer at the time referred to you in your response; if other than a natural person, the name of a contact person and that person's position with the identified entity.

h.  To "Identify a Statement" shall mean to provide a copy of any written statement and, to the extent that the statement is verbal or the following information is not contained in the written statement, to provide: the name of each person who participated in the communication, and the name of each person who was present at the time it was made; by whom each person was employed; the nature and substance of the communication; the date upon which such communication occurred; and where the original statement was made.

i.  To "Identify a Document" shall mean to provide the following information: the type of document (e.g., letter, memorandum, telegram, chart, etc.); the date the document was prepared or the date shown on that document; title of the document; the person who prepared the document; the person for whom the document was prepared; the subject matter covered by the document; and the present location of the document.

j.  If an interrogatory or document request is phrased in the singular or plural and a plural or singular response respectively is required, make the appropriate change.

3

k. All definitions provided apply in pertinent part to each interrogatory are incorporated by reference as is fully set forth in each individual interrogatory.

l. The term "Document(s)" means any instructions, manuals, booklets, diagrams, models,

written opinions, reports, records, documents, instruments, letters, memoranda, notes, summaries, statements, correspondence, assignments, logs, agreements, contracts, telegrams, notices, proofs, forms, cards, charts, drawings, graphs, graphic representations, work sheets, time sheets, bills, statements, invoices, books, ledgers, accounts, tape recordings, microfilms, computer printouts, papers, or other written, typed, printed or recorded material of any kind whatsoever (including diskettes, writings, drawings, graphs, charts, videotapes, films, photographs, CDS, records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form) in the possession, custody or control of Defendant(s), regardless of, by or for whom the document was prepared, regardless of the addressor(s) and addressee(s) and regardless of whether it is an original or a copy and regardless of how the Defendant(s) acquired possession.

## INTERROGATORIES

1. State the name, address, telephone number, title and duties of each person who prepared or assisted in the preparation of the responses to these interrogatories and the place where these interrogatories were answered.

2. State the name, address, and job title of each person who was contacted in answering these interrogatories or who provided information relevant to the answering of the interrogatories

4

and the proper designation of each book, document, or record which was searched in answering the interrogatories.

3. Are the Defendants' names correctly stated in the complaint on file in this cause? If not, state the correct way that the Defendants should be designed as a party defendant in an action of law.

4. State the general corporate history of the Defendant from the date of incorporation to the present, including the date and place of incorporation, date you first qualified to do business in Alabama, whether or not you continuously carried on business in Alabama since that date, and the specific or primary business engaged in by the Defendant.

5. Please state whether Defendant is a subsidiary, parent corporation, or sister corporation to another corporation. If so, give complete details as to the other corporation's state of incorporation, address of its principal place of business in state or registered office, date of incorporation, and the specific or primary business engaged in by the corporation. Additionally, state whether the corporation is qualified to do business in the State of Alabama since date of qualification.

6. State the name and addresses of each person who has acted as a director of the Defendant corporation during the time of the Incident. Please specify what period of time each director served.

7. At the time of the Incident, was there in effect any policy of insurance through which you were or might be insured in any manner for the damages, claims, or actions that have arisen out of the Incident? If so, for each policy state:

    a. the name and address of the insurance company;

5

    b.  the name, address, and telephone number of each named insured;

    c.  the policy number;

    d.  whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company, and if so, what it is.

8. Identify all Persons that have, or claim to have, any personal knowledge of the facts of this lawsuit, or who have witnessed the Incident or the events occurring immediately before or after the Incident, or who heard any statements made about the Incident, or who have, or claim to have, knowledge of any other discoverable matter.

9. With respect to each Person identified in Interrogatory No. 8, please provide the following:

    a.  A detailed description of the matters about which such Person has knowledge;

    b.  Each Person's occupation, relationship to the Defendant (e.g., employee, agent, independent contractor, etc.) and number of years employed or associated with the Defendant; and

    c.  If any such Person is self-employed or employed by an entity other than the Defendant, provide the name under which such Person does business of the name, address and telephone number of the entity which employs such Person.

10. For each of your employees (previous and current) physically present at the time of the and place of the Incident, please state: his or her name; complete address and phone number; job title, and whether he was on duty at time of the Incident.

11. Identify any Person that Defendant interviewed about the current Incident, and for each individual, state: the name, complete and current address and phone number; the

6

date of the interview; and the name, complete and current address and phone number of the Person who conducted the interview.

12. Have you or anyone acting on your behalf obtained a written or recorded statement from any individual concerning the Incident? If so, for each statement, state: the name, complete and current address and phone number of the individual from whom the statement was obtained; the name, address, and telephone number of the individual who obtained the statement; the date the statement was obtained; the name, address and telephone number of each Person who has the original statement or a copy.

13. Identify and describe any known photographs, films, or videotapes depicting any place, object or individual concerning the Incident and state the name, complete and current address and telephone number of the individuals taking the photographs, films, or videotapes and the Person who has the original or a copy.

14. Do you or anyone acting on your behalf know of any diagram, reproduction, or model of any place or thing concerning the Incident? If so, for each item state: the type; the subject matter; and the name, address, and telephone number of each Person who has it.

15. State whether the Defendant or anyone acting on your behalf has inspected the scene of the Incident; include: the name, address and telephone number of the individual making the inspection, and the date of the inspection.

16. Did any employee or anyone else acting on the behalf of the Defendant make a report concerning the Incident? If so, state: the name, title, address and phone number of the person who made the report; the date of the report; and the name, address and telephone number of the Person for whom the report was made.

7

17. State whether the facts and circumstances concerning the allegations of the Complaint have been investigated by You or Anyone Acting on Your Behalf. If so, please identify each investigator, the date and purpose for each investigation, and identify any statements or Documents resulting from such investigation.

18. Identify any Person whom you may call as a witness at the trial of this cause. Please provide a detailed description of the matters about which such Person is expected to testify and, if any Person so named has not already been identified in response to prior interrogatories, please provide the following:

      a.  Such Person's occupation and relationship to the Defendant (e.g., employee agent, independent contractor, etc.); and

      b.  If any such Person is self-employed or employed by an entity other than the Defendant, provide the name under which such Person does business or the name, address and telephone of the entity by which such Person is employed,

19. Please state whether You or Anyone on Your Behalf have consulted any experts concerning the facts of this case. If so, for each expert, please state:

      a.  his/her name, address, occupation and capacity;

      b.  whether he/she furnished an oral or written report of his/her findings or opinions concerning this matters for which consultation was obtained;

      c.  whether you intend to call him/her as an expert witness at trial;

      d.  the substance of his/her findings or opinions respecting this action;

      e.  the name, date, publisher, and author of any scientific technical, or professional text, treatise, journal, or similar publication upon which

8

such expert relied to form his/her findings or opinions.

20. Do you contend that any other person, business entity, or government entity is responsible in any way for Plaintiffs' injuries? If so, please state: the names, addresses, and telephone number of all persons who have knowledge of the facts; and identify all writings and other tangible things that support your contention and state the name, address, and telephone number of the person who has each writing or thing.

21. Does this Defendant or anyone acting on your behalf have any information that Plaintiffs made any admissions or declarations against interest which in any way would tend to support your version of this case? If so, state: the time and place when such admission or declaration was made; the substance of the admission or declaration; and the names and addresses of all Persons in who presence such admission or declaration was made.

22. List each and every defense known to this Defendant at this time which this Defendant presently intends to assert.

23. State whether or not there have been, or are now, lawsuits pending against the Defendants claiming injury or damage due to breach of contract, fraud, breach of fiduciary duty, negligence, wanton conduct, outrage, wanton or intentional misrepresentations, unethical business practices, or any civil actions that are similar to the occurrence that made the basis of this lawsuit. If so, for each such lawsuit, state:

    a. the date of the filing of each such lawsuit;

    b. the court in which such lawsuit was filed;

    c. the action or court number of each such lawsuit;

    d. the name and address of all parties, including Plaintiff and Defendant, to each

9

such lawsuit;

e.  a full and complete statement of the substance of all claims and allegations of each such suit;

f.  the jurisdiction in which each such action was filed;

g.  the jurisdiction in which each such action came or will come to trial if different from answer in Paragraph f;

h.  the disposition of each such lawsuit;

i.  the name and address of each person or entity having possession, control, or custody, of any or all records relating to such legal action against the Defendants involving such a claim or similar claim.

24.  State the facts and circumstances of any previous complaints, claims, or request to resolve a matter which were based upon facts similar to the occurrence that made the basis of this lawsuit.

RESPECTFULLY SUBMITTED,

ELIZABETH KAMMER
ATTORNEY FOR THE PLAINTIFFS
2320 ARLINGTON AVENUE
BIRMINGHAM, ALABAMA 35205
205-930-9800

DATE: October 04, 2005

## PLEASE SERVE PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS WITH COMPLAINT

10

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
TENTH JUDICIAL CIRCUIT
CIVIL DIVISION

ANNE-MARIE ADAMS
Clerk

OCT 0 5 2005

SHERLEE GINSBERG,                    )
BERNARD GINSBERG,                    )
                                     )
          PLAINTIFFS,                )
                                     )
v.                                   )    Civil Action No.: ⸱ⱽ05  5936
                                     )
LEDIC REALTY MANAGEMENT              )
SERVICES, INC., C-K                  )
BRECKENRIDGE, LLC., CLK              )
MANAGEMENT CORP., and et al.,        )
                                     )
          DEFENDANTS.                )

PLAINTIFFS' NOTICE OF TAKING DEPOSITIONS

Please take notice that Plaintiff in the above styled cause will take the testimony by

deposition upon oral examination for the purpose of discovery and/or for use as evidence in

this cause in accordance with the Alabama Rules of Civil Procedure as follows:

DEPONENT                              DATE, TIME & LOCATION

Susan Hughes                          Wednesday, December 07, 2005
                                      10:00 A.M
                                      Office of Jaffe, Strickland, and Drennan, P.C.
                                      2320 Arlington Avenue
                                      Birmingham, AL 35205
                                      Phone: (205) 930-9800

Current Property Manager of           Immediately thereafter
Breckenridge Apartments

Jim Caley                             Immediately thereafter

1

examination will continue from day to day until completed.

You are invited to attend and cross-examine.

RESPECTFULLY SUBMITTED,

ELIZABETH KAMMER
ATTORNEY FOR PLAINTIFFS
2320 ARLINGTON AVENUE
BIRMINGHAM, ALABAMA 35205
205-930-9800

DATE: October 04, 2005

**PLEASE SERVE PLAINTIFFS' NOTICE OF TAKING DEPOSITIONS
WITH COMPLAINT**

4

**APARTMENT LEASE**

PLAINTIFFS' EXHIBIT

**1. PARTIES:** THIS LEASE made this __10th__ day of __October__, 20 __03__

between __C-K Breckenridge, LLC.__ (hereinafter referred to as Lessor)

and __Bernard and/or Sherlee Ginsberg__ (hereinafter referred to as Lessee).

**WITNESSETH:**

That in consideration of the representations made in the application filed by the Lessee and the conditions and covenants herein set forth, the Lessor hereby leases to the Lessee the following described property:

**2. PREMISES:** Apartment No. __05__ at (address) __3216 Bearden Place__ in

(City) __Birmingham__, (State) __Alabama__ Zip Code __35243__ for use by Lessee as a private residence only.

**3. TERM:** This lease is for a term of __Twelve__ months, __Twentywo__ days, commencing on the __10th__ day of __October__, 20 __03__ and ending on the last calendar day of __October__, 20 __04__.

**4. RENT:** The Lessee agrees to pay the Lessor a rental of __Eight Thousand Five Hundred Eighty Dollars__ ($ __8,580.00__ ) Dollars, payable in monthly installments of __Seven Hundred fifteen dollars__ ($ __715.00__ ) Dollars, each to be due and payable, respectively on the first day of __November__, 20 __03__ and on the first day of each month thereafter. All rental payments are to be paid at the Resident Manager's Office or at such place as Lessor may designate. Such rental payment is to be made by check, money order or bank cashier's check. CASH IS NOT ACCEPTABLE FOR ANY PAYMENTS DUE. Should the Lessee fail to pay rents as they fall due or violate any of the conditions of this lease, or should there be any misstatement or untruth in application made by the Lessee, the Lessee's possessory interest in the demised premises shall be terminated on the day that the rent first becomes delinquent, the day any violations of the lease are committed, or the day there is any misstatement or untruth made in the application. The Lessee agrees that no further notice of termination of his possessory interest shall be necessary in that the Lessor may take action to reenter the premises by filing only one 24 hour notice in accordance with the unlawful detainer procedures of the State of Alabama.

**5. PRO-RATED RENT:** It is understood and agreed that Lessee is taking possession of the premises on the __10th__ day of __October__, 20 __03__; and is to pay the sum of __Five Hundred Seven Dollars__ ($ __507.00__ ) Dollars, as rent, from that day through the last day of __October__, 20 __03__.

**6. DEPOSITS:** At the time of execution of this lease Lessee has deposited with Lessor, the receipt of which is hereby acknowledged, the sum of __Two Hundred Dollars__ ($ __200.00__ ) Dollars Security Deposit which is to be held by Lessor as a guarantee for the full and faithful performance of all the terms and conditions of the Lease by Lessee. THIS DEPOSIT IS NOT RENT AND SHALL NEVER BE APPLIED BY THE LESSEE AS PAYMENT IN WHOLE OR IN PART OF ANY RENTAL PAYMENTS DUE UNDER THE LEASE. In the event of any violation of the terms of this lease by the Lessee, this security deposit, or a portion thereof, may be retained and offset against any damages due lessor.

**SECURITY DEPOSIT RETURN:** The Lessor shall not be obligated to release the Security Deposit unless the following conditions are met:

1. Full term of lease has expired.
2. Thirty days written notice was given by the Lessee to the Lessor.
3. No damage to property beyond normal wear and tear.
4. Entire apartment, including range, exhaust fan, refrigerator, bathrooms, closets and cabinets are clean. Refrigerator is to be defrosted.
5. No stickers or scratches or holes in walls.
6. No damage to carpet beyond normal wear and tear.
7. No unpaid charges or rent.
8. All keys are returned.
9. All debris and rubbish and discards placed in proper rubbish containers.
10. Forwarding address left with management.

(Initials)

**CHARGES AGAINST DEPOSIT:** At the expiration of the term of this lease, the balance, if any, of said security deposit will be returned to Lessee after deducting therefrom any unpaid rent and / or the following charges or damages, if in the discretion of Lessor such charges are necessary in order to put the leased premises in suitable condition for occupancy by a subsequent lease:

(a) Apartment cleaning charge of THIRTY-FIVE AND NO/100 ($35) DOLLARS.
(b) A stove cleaning charge of TWENTY-FIVE AND NO/100 ($25) DOLLARS.
(c) A refrigerator cleaning charge of TWENTY-FIVE AND NO/100 ($25) DOLLARS.
(d) The reasonable cost of repairing any damage to the premises, furnishings, or equipment, or the cost of the replacement of any furnishings or equipment removed from the premises or damage beyond repair.
(e) Apartment keys not returned — TWENTY-FIVE AND NO/100 ($25) DOLLARS.
(f) Spray for fleas, per application - TWENTY-FIVE AND NO/100 ($25) DOLLARS.

In the event the above deductions exceed the amount of the security deposit the excess shall promptly become due and payable from the Lessee.

**7. PET PROVISIONS:** (A) IT IS HEREBY AGREED TO AND UNDERSTOOD THAT THE LESSEE DOES/DOES NOT HAVE A PET UPON TAKING OCCUPANCY. IF THE LESSEE DOES HAVE A PET, THE FOLLOWING PROVISIONS WILL APPLY:

(1) The Lessee may have no more than two pets. If Lessee has two pets, the "Pet" referred to in this lease agreement applies to each pet. The Lessee agrees that only the pet(s) described and named below and which has been approved by the manager can occupy the premises. No additional or different pet is authorized under this agreement. Acceptable pets are defined as dogs, cats, birds and fish.

(2) The Lessee agrees that pet will be kept inside apartment at all times except when on a leash and accompanied by the Lessee. Lessee will not have pet unattended on the patio or balcony.

(3) Pet(s) will not cause: Danger, damage nuisance, noise, health hazard, or soil the apartment, premises, grounds, common areas, walks, parking areas, landscaping or gardens. Lessee agrees to clean up after the pet and agrees to accept full responsibility and liability for any damage, injury or actions arising from or caused by his pet(s). The Lessee agrees that if pet becomes annoying, bothersome, or in any way a nuisance to other Lessees or to the apartment operation, the Lessee will immediately upon notice from the Lessor remove pet from the premises or vacate the apartment.

(4) The Lessee agrees to pay the Lessor a NON-REFUNDABLE PET FEE in the amount of $ __n/a__ per pet. The Fee does not apply toward damages created by said pet(s).

(5) In the case of a visiting pet, defined as a pet owned by someone other than the Lessee, a pet fee will be required. In the event the Lessee vacates the premises, and evidence of a pet is found in the leased premises, the Lessee will be charged an amount equal to the current pet fee.

(6) Lessee agrees to register the pet(s) in accordance with local laws and requirements. Lessee agrees to immunize the pet(s) in accordance with local laws and requirements.

(7) At the Lessee's expense, a chemical treatment for fleas will be done after Lessee vacates said premises.

(8) Lessee warrants that the pet(s) is housebroken. Lessee warrants that the pet(s) has no history of causing physical harm to persons or property, such as biting, scratching, chewing, etc., and further warrants that the pet(s) has no vicious history or tendencies.

(Initials)

Type of Pet: __n/a__ Weight: __n/a__ Breed: __n/a__

Color: __n/a__ Tag No.: __n/a__

B. IN THE EVENT THE LESSEE DOES NOT HAVE A PET UPON MOVING IN, THE FOLLOWING PROVISIONS WILL APPLY:

Should the Lessee desire to have an acceptable pet to reside on the premises, simultaneous with the pet acquisition, notification to the Lessor will be required for the approval of such pet. Such a pet will be allowed providing the following conditions are met:

(1.) The pet meets the size limitations established by the Lessor and is registered in the office of the Lessor.

(2.) The Lessee acknowledges that he will comply with the guidelines established by the Lessor regarding pets.

(3.) A NON-REFUNDABLE PET FEE OF $ __200.00__ per pet is remitted to the Lessor. __$200 pet deposit per pe__ If pet is found that is not registered and a fee has not been paid, then the Lessee understands that the pet fee will be one and one-half times that of the current fee or $ __300.00__, plus any accrued damages. The total will be due immediately upon demand.

Failure to meet this demand shall result in default of the lease, at which time the remedies in the lease, specifically in the paragraph subtitled "Default" will be pursued.

**8. CANCELLATION OPTION:** Should Lessee desire to terminate the terms of this Lease prior to the expiration thereof, for any reason other than default of the Lessee, Lessor shall have the right, at Lessor's sole discretion and option to permit such early termination of this Lease, provided that the following conditions are met: (1) Lessee, provides a thirty (30) day written notice stating he wishes to terminate his lease early. (2) Lessee pays to Lessor as liquidated damages the parties hereto agreeing that such damages to Lessor from termination are impossible to ascertain at this date, but that the amount described herein would fairly compensate Lessor for such expected damages and represent a reasonable estimation thereof prior to the date of cancellation an amount equal to the lesser of (i) __Seven Hundred Fifteen Dollars__ ($ __715.00__ ) dollars, plus the security deposit. (3) All rents due through the date of termination must be paid prior to vacating the premises. (4) The premises will be left in good clean condition with no damages, ordinary wear and tear excepted. (5) If all these conditions are not met, the Lessor will consider the full lease term in effect and will purse all legal remedies provided for by the lease.

(Initials)

**9. LATE CHARGES AND RETURNED CHECKS:**

The Lessee agrees to pay a late charge of $ __10% of mo. rent__ in the event that the monthly installments are not received by the fifth (5th) day of each month. REGARDLESS OF THE DAY OF THE WEEK ON WHICH THE FIRST(1st) MAY OCCUR AND REGARDLESS OF WHETHER THE FIRST (1st) IS A HOLIDAY OR OTHER NON-BUSINESS DAY, RENT WILL BE CONSIDERED DELINQUENT IF RECEIVED AFTER THE FIRST (1st) DAY OF THE MONTH. A night drop has been provided at the office of the Lessor for the convenience of the Lessee for the holiday and afterhours delivery of the rent.

*(Initials)*

If the Lessor is given a check and said check is not honored in presentation for any reason whatsoever, Lessee agrees to pay a bad check charge of $ __40.00__ in addition to any late charge.

**10. OCCUPANTS:**

The Lessee agrees that the premises are to be occupied only by those persons specifically named herein: _____

_____ Bernard and Sherlee Ginsberg _____

If any other person resides with the Lessee without prior written authorization from the Lessor, the Lessor has the right to declare the lease in default. The Lessee further agrees that the above-demised premises cannot be assigned or sublet by said Lessee either in whole or in part. The Lessee recognizes that the Lessor must be in a direct Lessor-Lessee relationship and that a subletting or an assignment would complicate the Lessor's dealings. The Lessee shall not have the right to request subletting or assignment.

**11. OCCUPANCY:**

Should the Lessee be unable to obtain possession of the date of the lease term because of delays of the Lessor, or by reasons of the holding over of any previous occupants of said premises, or if a building is to be constructed and workmen or contractors have not brought the building to a condition permitting occupancy, or should there by any other delay in granting possession, the Lessor shall not be liable in damages to the Lessee. If Lessee shall remain or continue to be in possession of the leased premises or by any part thereof after the termination of this Lease. Lessor shall, at this option have the right to charge Lessee as liquidated damages FIFTY AND NO/100 ($50) DOLLARS per day for the time such possession is withheld.

**12. STRUCTURAL DAMAGE:**

If the leased premises are destroyed by fire, and such fire is due to the Lessee's fault or negligence, then in that event the monthly installments shall not abate.

If the leased premises, or the building in which the leased premises is located shall be damaged by fire or by other unforeseen event, without fault of the Lessee, then, and in that event, the Lessor shall have the option to decide whether the Lessor shall or shall not repair and restore said building or leased premises to their original shape; and if the Lessor decides to repair and restore the building or the rented premises as aforesaid, then, from the time such damages occurs until the repairs are completed, an equitable abatement of the monthly installments will be allowed. It is agreed, however, that if the damage is such as not to render the leased premises untenable for the purpose for which they are rented, then there shall be no abatement of the rent while the repairs are being made

Except for the normal hanging of pictures and wall decorations that do not deface wood, masonry or sheetrock surface, the Lessee shall not drive any nails or tacks or set any screws into any part of the apartment or building, or make any structural change, whatsoever without first obtaining the written consent of Lessor.

**13. DEFAULT:**

Should the Lessee fail to pay rents as they fall due as aforesaid, or violate any of the conditions of this lease, or should there be any misstatement or untruth in the application made by the Lessee, the Lessor shall have the right at the Lessor's option to re-enter said premises and annul this lease. Such re-entry shall not bar the recovery of rents or damages for breach of the lease contract nor shall the receipt of rent after conditions are broken be deemed a waiver for forfeiture. In order to entitle the Lessor to re-enter, it shall not be necessary to give notice of rent being due and unpaid, nor to make demands for rent; the execution of the lease, signed by the parties thereto, while signing is hereby acknowledged, is sufficient notice of the rents due. Any law, usage, or custom to the contrary, notwithstanding.

And the Lessee further covenants and agrees should the Lessee violate any conditions of this lease, then in such case, the whole rent for the whole term of the lease shall at once become due and payable, at the option of the Lessor, and the Lessor may proceed by attachment, suit, or otherwise, to collect, the whole in the same manner, as if by the terms of this lease the whole rent for the entire term were payable in advance.

**14. TERMINATING LEASE:**

If either the Lessee or the Lessor desires that this lease terminate at the expiration of its term, including month to month tenancy, one must give to the other WRITTEN NOTICE TO BE RECEIVED NOT LESS THAN THIRTY (30) DAYS PRIOR TO THE EXPIRATION OF THE LEASE TERM. If the written notice is given less than thirty (30) days prior to the expiration date, the Lessee's obligation to pay rent shall extend to the number of days required to fulfill the thirty (30) days notice period. The Lessor reserves the right to show the premises to intended Lessees and to display "FOR RENT" signs on said building or premises.

**15. AUTOMATIC RENEWAL:**

Failure of either party to give proper termination notice will automatically renew this lease for an additional term on a MONTH-TO-MONTH basis, at the month-to-month rental rate as established by the Lessor, and under such circumstances, either the Lessor or the Lessee shall be required to give thirty (30) days written notice in order to terminate the lease. This notice may be given at any time; and if the notice period does not correspond with a full calendar month, the Lessee's final rent payment will be prorated in accordance with the number of days required to fulfill the notice period or the number of days the Lessee occupies the apartment unit, whichever is the longer.

**16. CHANGES IN LEASE PROVISIONS:**

The Lessee further agrees that, unless otherwise provided herein, upon the termination of the initial term of the lease, the Lessor can make changes in the lease provisions after the initial term and during the period in which the lease is on a month-to-month basis by notifying the Lessee of such changes by sending a copy of said changes to the Lessee by regular mail, personal delivery or posting at least 30 days prior to the day of the change. Such changes will be binding upon the Lessee as long as the Lessee remains a tenant of the Lessor. This provision is a continuous one and will apply at the expiration of the original term and during each subsequent monthly term.

**17. ABANDON-MENT:**

The Lessee's absence from the premises for seven (7) consecutive days without prior written notice,during which time rent or other charges are delinquent, shall be deemed abandonment of the premises. Such abandonment will be deemed cause for immediate termination without notice, and the Lessor at its option may cancel the lease or re-enter and let the premises for such terms as may be immediately obtainable, and apply the net amount collected to the amount due hereunder by the Lessee. Re-entering and letting shall not relieve the Lessee of its obligation to pay amounts due under this lease.

**18. WARRANTY AND INDEMNITY:**

It is further understood and agreed that the Lessor shall not be liable for any injury to person or damage to property which may occur on account of any defect in said leased premises or the premises of the apartment complex of which the leased premises are a part, including damages caused by rain, wind, broken pipes, failure of air conditioning or heating or other causes. The Lessee agrees and does hereby indemnify, protect and save harmless the Lessor from any loss, cost, damage or expense caused by or resulting from injuries to persons or property, while in, on, or about the premises herein leased. Any and all property of said Lessee which may be located or stored either in the demised premises or the apartment complex of which the demised premises form a part shall be at the sole risk of the Lessee. The Lessee waives any right of subrogation against the Lessor under any insurance policy and shall cause the Lessee's insurance carriers to waive the same. LESSEE FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT THE IMPORTANCE OF SECURING PERSONAL PROPERTY INSURANCE (RENTER'S INSURANCE) HAS BEEN EXPLAINED TO THE LESSEE AND IT IS UNDERSTOOD THAT IN THE EVENT OF A LOSS, THE PROPERTY'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE OF ANY PERSONAL ITEMS. LESSEE ACKNOWLEDGES THAT LESSEE HAS BEEN ADVISED TO SECURE RENTER'S INSURANCE. The Lessee hereby acknowledges the good condition of the leased premises and his acceptance of this lease is conclusive evidence that said premises are in good and satisfactory order and repair unless otherwise specified herein, and he agrees that no misrepresentation as to the condition of the premises has been made and no promise made to decorate, alter, repair, or improve the premises unless otherwise specified in writing.

*Initials*

**19. LIABILITY:**

It is understood that no employee of the Lessor is furnished to provide any personal services to the Lessee, his family, employees or guests, and the Lessee agrees to relieve the Lessee and hold the Lessor harmless from any and all liability in connection with such service. By way of illustration, but not by way of limitation, no employee of the Lessor is authorized to perform any errand, porter, cleanup, valet, maid, babysitting, carpentry, handyman, garbage removal, trash or other services; and, in the event any such services are rendered, the Lessor shall not be liable in connection therewith, and the Lessee shall fully indemnify and save the Lessor harmless.

**20. TAXES, INSURANCE AND UTILITIES:**

Lessee shall pay the public utility bills for said leased premises when and as the same severally become due, and make all required deposits with public utility companies, unless specifically included in the rent. Lessee acknowledges that if Lessor is currently paying for water and sewer service to the leased premises, without expense to Lessee, the Lessor shall have the right at any time during the term of this lease to install a water meter to measure service to the leased premises. If any such meter is installed, upon a thirty (30) day written notice, Lessee shall thereafter be liable for paying for water and sewer charges for the leased premises in the same manner as prescribed above for any other public utilities, without reduction or abatement of rent. Lessee acknowledges that Lessee will be responsible for the meter deposit and application fee. The Lessor shall not be liable for any injury or damage whatsover which may arise or accrue either upon its furnishing or its failure to furnish hot or cold water or air-conditioning or other utilities to the leased premises regardless of the cause or on account of any defect in the building or premises. The monthly rental figure contained hereinabove is based, in part, upon ad valorem tax rates, insurance rates, rental taxes, and public utility service rates existing at the time of the execution of this lease, and being paid by the Lessor. In the event of any increase or increases in the existing rates during the term of this lease the Lessor may, at its option, assess all of the Lessees in this apartment complex with a pro rata share of such increase. The Lessee's pro rata share shall be that portion of such increase equal to the product obtained by multiplying said excess by a fraction, the numerator of which shall be one and the denominator of which shall be the total number of apartment units in the development. The Lessee agrees to pay his or her pro rata share of such increase in monthly installments as additional rent hereunder commencing with the month following the date the Lessor must pay said increase. The Lessee agrees that if any taxing authority enacts a tax which is computed on the rent, then this tax shall be passed on to the Lessee as additional rent and the monthly rent shall be increased by the amount enacted by the taxing authority.

**21. EXCULPATORY AND RELEASE PROVISION:** The Lessor (including its managing and leasing agents and its other agents, servants and employees) shall not be liable, or responsible in any manner to the Lessee, or to any of the Lessee's spouse, children, guests, invitees, heirs, personal representatives, successors or assigns, or to any persons having interests in any property located on the premises or the complex of which the premises are a part, for personal injury (including death), property damage, property loss (including decrease in value of property), or any other type of loss or damage giving rise to any claim for damages or to any other type of claim whatsoever, which results from negligence and/or other fault, except willful misconduct, and which arises, in whole or in part, from any condition, accident or occurrence relating to the premises or the complex of which the premises are a part, including: any defective or other condition in buildings, equipment, improvements, appurtenances, storages areas, swimming pool facilities, other facilities, and common areas, and including latent and patent conditions, whether known or unknown, and whether now existing or later developing; conditions relating to plumbing, heating, air-conditioning, and equipment, appliances, facilities or machinery, whether in proper working order resulting from acts of God and the elements, including wind, rain, hail, snow, storms, floods, and earthquakes; conditions relating to repair, alteration or replacement work performed by or on behalf of the Lessor, or relating to circumstances delaying or preventing such work from being performed; conditions relating to theft, burglary, vandalism, acts of violence, other acts of third-parties, acts of other Lessees of the complex, and any acts or matters relating to security; and any conditions or circumstances relating to any services or undertakings provided by the Lessor or by anyone acting on behalf of the Lessor.

This provision was specifically called to my attention. I understand the provision. I agree that the provision is valid and binding.

_(Initials)_

AND THE LESSEE ACKNOWLEDGES THAT THE PROVISIONS OF THE PRIOR PARAGRAPH, WHICH LIMIT THE LIABILITY OF THE LESSOR (INCLUDING ITS MANAGING AND LEASING AGENTS AND ITS OTHER AGENTS, SERVANTS AND EMPLOYEES) WERE BARGAINED FOR BETWEEN THE LESSEE AND THE LESSOR, AND THAT THE RENT WOULD BE INCREASED IF THIS PROVISION WERE NOT IN THE LEASE.

**22. ATTORNEY'S FEES AND COURT COSTS:** In the event of employment of an attorney for the collection of any amount due hereunder, or for the institution of any suit for the possession of said property, the Lessee shall pay and shall be taxed with the reasonable attorney's fees, or any other expenses incurred by Lessor which shall be a part of the debt evidenced and secured by this lease.

**23. RULES AND REGULATIONS:** The Lessee agrees to comply with and to cause the Lessee's guests and family members to comply with the rules and regulations for the complex that may exist from time to time; and the Lessee agrees that the rules and regulations may be amended from time to time by the Lessor and notice of such amendments rules and regulations shall be sufficently given by posting a copy thereof on the door of the leased premises. IT IS AGREED THAT THE VIOLATION OF ANY SUCH RULES AND REGULATIONS BY THE LESSEE OR ANY OF THE LESSEE'S GUESTS OR FAMILY MEMBERS SHALL CONSTITUTE A DEFAULT IN THE TERMS OF THIS LEASE. The Lessee hereby agrees to be bound by the following:

1. Notices: All complaints and requests shall be made to the Manager during normal business hours. The Lessee shall also give immediate notice to Manager of any accident, property damage or injury.

2. Moving: Moving of furniture and other bulky articles other than within the Lessee's own apartment shall be conducted on the premises only after the consent of the Lessor is first obtained. Any damage to the building or any property of the Lessor or to the person or any property of anyone else by the moving of articles in or out of the premises by the Lessee shall be paid for by the Lessee causing such damage.

3. Pets: Pets will not be permitted in the leased apartment UNLESS EXPRESS WRITTEN CONSENT OF THE LESSOR IS GIVEN as provided in paragraph 7 of this apartment lease.

4. Aerials: The Lessee agrees that no radio wires, or television aerials, or their appurtenances shall be placed on any building without the expressed written consent of the Lessor.

5. Guests: The Lessee shall be responsible for his guests and the action of the guests, including any damage done to the premises by any such guest. Persons shall not play in the halls or stairways of the leased premises or be allowed to create disturbances of any nature.

6. Noises: No Lessee shall make, or permit to be made by his family or guest, any disturbing noises or interfere in any way with rights of other residents or the operation of the property by the Lessor or its Agents. The volume of any stereo, radio, T.V., or musical instrument or any other noise or music reproduction device must be sufficiently reduced at all times so as not to disturb other occupants in the building. Vocal or instrument practice will not be conducted in or about the promises. The Lessor has the right and sole discretion to determine if the level of volume affects other occupants and can terminate this Lease if noise violations occur.

7. Inflammables and Explosives: Storage of kerosene, gasoline, butane or other bottled gases, or other inflammable or explosive agencies is prohibited inside the premises.

8. Sales: No yard or auction sales of any nature shall be permitted under any circumstances.

9. Waterbed: Waterbeds are only permitted WITH WRITTEN PERMISSION OF THE LESSOR. Such permission will be contingent upon the Lessee providing proof of adequate damage protection under apartment dweller's insurance coverage.

10. Locks and Keys: The Lessor will retain the pass key to each apartment, and Lessor reserves the right to enter the apartment in order to inspect the same. No Lessee shall alter any lock or install a new lock on any door leading into his apartment without the prior written permission of the Lessor. If such approval is given, the Lessee shall provide the Lessor with a key for the Lessor's use.

11. Sweeping: No Lessee shall sweep or throw or permit to be swept or thrown from the leased premises including patios, balconies, windows, and doorways, any dirt or other substances into any of the corridors, halls, or into the yard area or on the porch area of any other Lessee.

12. Repairs: The Lessor, his agent, his janitor, watchmen, and employees may enter the leased premises at any reasonable time to examine the same or make needed repairs to the premises, or to install or repair pipes, wires, and other appliances and items deemed by the Lessor essential to the use and occupation of other parts of the building.

13. Windows, Drapes and Blinds: Cleaning and maintenance of windows and glass doors are the Lessee's obligation. Foil on windows and glass doors is forbidden. Drapes or blinds which are furnished by the Lessor must be used. Should Lessee desire to use his own drapes/blinds, written permission of the Lessor is required. Personal drapes must have plain, off-while linings. Personal blinds must be ivory or off-white in color.

14. Appearance: The hanging of rugs, laundry, towels, mops or articles of clothing over the window sills or balcony rails is forbidden. Outside garbage containers other than those provided by the Lessor are forbidden on the demised premises. Bagged trash or recyclables are not to be left outside the door of the leased premises.

15. Light Bulbs: The Lessee agrees to replace all burned out light bulbs in his apartment.

16. Smoke Detector: All apartments are equipped with smoke detectors for the protection of the Lessee. These detectors should be tested monthly to assure their working condition and any problems should be immediately reported to the manager. In the case of battery operated smoke detectors, it is the responsibility of the Lessee to replace inoperable batteries.

_(Initials)_

17. Bicycles: Bicycles and skateboards are prohibited on sidewalks, tennis courts, courtyards or in pool area.

18. Vinyl Siding: Where vinyl siding is present on the exterior of the building, certain precautions are required. Bar-b-que grills must be kept at least TWO FEET away from the siding when in use. Hooks, screws and decorator items cannot be installed or attached to vinyl siding. Charges for replacement will be assessed to the Lessee if the siding is damaged.

19. Patios/Balconies: The patio or balcony of the apartment dwelling must be furnished with plants and appropriate patio furnishings only, and is not to be used as a storage room.

_(Initials)_

20. Alterations: No alterations, painting or redecorating of a permanent nature may be done to the apartment or balcony/patio.

21. Common Areas: Sidewalks, passageways, stairways, courtyards and other grounds shall not be obstructed by the Lessee, or used for any purpose other than ingress and egress to and from the premises. These unleased portions of the building are reserved to and under the exclusive control of the Lessor. This includes, but not limited to, hanging plants or items in breezeways or stairways and the planting of plants of any kind in the ground.

22. House Plants: Water tight containers or plastic plant trays should be used under all plants. Lessee will be responsible for replacing the carpet in an apartment if water stains are left in the carpet upon Lessee's vacating the premises. Water tight containers or plastic trays or pans should also be used under plants on upstairs balconies/patios to prevent water from leaking to the balcony/patio below.

There are other rules specific to the leased premises which may not be addressed in Section 23 titled "Rules and Regulations". The Lessor retains the right to enforce such rules as they may apply to this apartment complex.

**24. SWIMMING POOLS & OTHER AMENITIES:** The exculpatory provisions in paragraph 21 to this lease apply to any damage or injury to persons or property caused as a result of the use of the swimming pool and other amenities by the Lessee or any persons making use of said common areas through the use, permission, or consent of the Lessee. No children under the age of twelve (12) years of age will be allowed in or about the swimming pool area unless accompanied by an adult, and no child in diapers will be allowed use of the pool. Pool use hours will be posted at the pool area.

All common areas, such as the swimming pool, lodge, weight room, tennis courts or any other amenity, are private property for the use of Lessees only. The hours of operation shall be posted. Guests of Lessees must be limited to two (2) persons per apartment at any one time and they must be accompanied by a Lessee unless written permission to the contrary is given by the Manager. The current published regulations must be observed as to use of pool by residents and guests. The Lessee further agrees that only a greaseless style sun-tan lotion may be used and not an oil base sun-tan lotion; and further agrees that no ball playing, running or wrestling will be allowed in the pool or pool area.

Beverages brought to the pool area should be in containers other than glass. NO GLASSES, BOTTLES, GLASS CONTAINERS OR FOOD ARE ALLOWED IN THE POOL AREA. Other rules are to be observed as posted throughout the property from time to time by the Lessor.

**25. VEHICLES:** Motorcycles, including motorbikes and minibikes shall not be parked in the breezeways, hallways, patios, grass or lawn area. These will be parked in other areas specifically provided by the Lessor with care taken to protect the asphalt from damage caused by kick-stand or oil leakage. Riding of same on sidewalks or lawns is prohibited. Lessee shall not park nor permit Lessee's guest or invitees to park boats, mobile homes, recreational vehicles, commercial vans, trucks or other equipment in parking areas designated for automobiles or on the grass or in any other area on the premises without the written permission of the Lessor. Such vehicles can be towed away at the Lessee's expense. Parking is not assigned or reserved except where there is a garage or covered parking area. However parking areas are limited, and no Lessee shall park more than the number of vehicles allowed by Lessor on the premises at any time. The parking of additional vehicles would require written permission of the Lessor. Failure to obtain written permission shall be a violation of the conditions of this lease. There shall be no more than two (2) vehicles per a one bedroom apartment and no more than three (3) vehicles per a two or three bedroom apartment.

All vehicles parked in the parking lot by the Lessee, his guests, agents or invitees shall be operable and shall bear a current license plate. Vehicles shall be parked only in the paved areas provided for parking. THE LESSOR SHALL GIVE TO THE LESSEE THREE DAYS NOTICE TO REMOVE ANY INOPERABLE VEHICLE OR VEHICLE WITH AN EXPIRED LICENSE PLATE. IF THE LESSEE FAILS TO REMOVE THE VEHICLE, THE LESSOR SHALL REMOVE IT AT THE LESSEE'S EXPENSE. Inoperable includes flat tires and dead batteries.

IT IS EXPRESSLY PROHIBITED TO WORK ON OR REPAIR AN AUTOMOBILE OR MOTORCYCLE OR ANY OTHER TYPE VEHICLE ANYWHERE ON THE PREMISES. LIKEWISE, THE WASHING OF AUTOMOBILES OR MOTORCYCLES ON THE PREMISES IS NOT PERMITTED.

*(Initials)*

**26. NUISANCES:** The Lessee agrees to comply with all the laws and ordinances of the City in regard to nuisances insofar as the leased premises and the streets, alleys and premises of the Lessor around the same are concerned, and that the Lessee will by no act or omission render the Lessor liable for any violation of such City law or ordinance. Should the Lessee, his family or guest, fail to maintain a standard of behavior consistent with the consideration necessary to provide reasonable peace and quiet to other tenants, such as by being boisterous or disorderly, creating undue noise, disturbance or nuisance of any nature or kind, then at the option of the Lessor, the rent for the whole expired term of the lease shall at once become due and payable, and the Lessor shall have the further option to cancel this lease, and recover possession of the premises.

**27. DRUG FREE HOUSING:** The Lessee, any member of the Lessee's household, or a guest or other person on the Lessee's premises shall not engage in or shall not permit the premises to be used for, or to facilitate criminal activity on or near the premises, including, but not limited to violent criminal activity or drug-related criminal activity. "Violent criminal activity" means any felonious criminal activity that has one of its elements the use, attempted use, or threatened use of physical force against a person or property of another. 'Drug-related criminal activity" means the illegal manufacture, sale, distribution, or use, or possession with the intent to manufacture, sell distribute, or use of a controlled substance. Any such violation is grounds for termination of this lease and eviction from the premises.

**28. ENTIRE AGREEMENT:** This lease and the amendments, if any attached thereto and forming a part hereof, set forth all covenants, promises, conditions, and understanding between the Lessor or its agents and Lessee concerning the leased premises, and there are no covenants, promises, agreements, conditions, or understandings, either oral or written, between them other than herein set forth. No modification or limitation or extension of any condition of this lease will be binding unless in writing and signed by the Lessor or its Agents and the Lessee. The Lessor or its agents failure to act on any default on the part of the Lessee shall not be construed as a waiver thereof, nor shall any custom or practice that may be created between the parties in the course of administering this instrument be construed to waive or to lessen the right of the Lessor to insist upon the provisions hereof. It is understood that the terms "Lessor or its Agents" and "Lessee" are used in this agreement and they shall include the plural and shall apply to persons both male and female. All obligations of the Lessee are to be joint and severally. This lease, whether or not recorded, shall be junior and subordinate to any mortgage hereafter placed by the Lessor in the entire property of which the leased premises form a part.

**29. LESSOR'S CONSENT:** Whenever any action or any condition is prohibited or restricted under this lease unless the Lessor's consent is secured, or the Lessor's consent is required under this lease either expressly or by implication, the Lessee agrees that the Lessor's decision to consent or not need not be made in accordance with any particular criteria or commercial standards (including "reasonable commercial standards), that the Lessor may make its decision on the basis of any factors which seem relevant to the Lessor and that the Lessor's decision, for whatever reason, shall be conclusive and binding on the Lessee. The Lessor may condition the giving of its consent upon whatever requirements and conditions seem desirable to the Lessor regardless of whether the Lessor's position and / or the particular requirements and conditions accord with any particular criteria or commercial standards, including reasonable commercial standards.

**30. PARTIAL INVALIDITY:** If any section, clause, sentence, word or provision of this lease or the application thereof to any party or circumstances shall, to any extent, be or become invalid or illegal, and such provision shall thereby become null and void, the remainder of this lease shall not be affected thereby, and each remaining provision of this lease shall not be affected thereby, and each remaining provision of this lease shall be valid and enforceable to the fullest extent permitted by law.

**31. REITERATION:** The Lessee further agrees and acknowledges that Article 18 (WARRANTY AND INDEMNITY), Article 19 (LIABILITY) and Article 21 (EXCULPATORY AND RELEASE PROVISION), were specifically called to the Lessee's attention by the Lessor and were bargained for before the lease was signed and that the Lessee was informed and understood the meaning of these provisions and their legal effect prior to signing this lease, and that the rent would be increased if this provision were not in the lease.

*(Initials)*

C-K Breckenridge, LLC.

_____ Lessor

By: _____ Agent for Lessor
Susan Hughes
Property Manager

READ YOUR LEASE BEFORE SIGNING

_____ Lessee
Bernard Ginsberg

_____ Lessee

_____ Lessee
Sherlee Ginsberg

_____ Lessee

Rev. 6/97



AVS0305

ALABAMA JUDICIAL DATA CENTER
JEFFERSON MONTGOMERY CO ALA

ORDER FOR SERVICE AND RETURN

2005 OCT 11  A 8: 23

CV 2005 005936.00
JOSEPH L. BOOHAKER

IN THE CIRCUIT  COURT OR JEFFERSON  COUNTY

SHERLEE GINSBERG ET AL VS LEDIC REALTY MANAGEMENT SERVICES ET AL

SERVE ON:   D001

Montgomery

LEDIC REALTY MANAGEMENT SERV
% THE CORP CO-SUITE 204
2000 INTERSTATE PK DR
MONTGOMERY     ,AL   36109-0000

NOTES:
   S&C/INTGS/REQ PRODUCTION/NOTICE TAKING DEPOSITION

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
            YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
            TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

   10/07/2005  DATE           CLERK: ANNE-MARIE ADAMS           BY:_____
                              RM 400 JEFF CO COURTHOUSE
                              BIRMINGHAM   AL   35203
                              (205)325-5355

I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
   DOCUMENT IN _____ COUNTY, ALABAMA
   TO:

_____          _____
                                             SIGNATURE OF SERVER

_____

_____          _____
NAME / ADDRESS ABOVE                         DATE

OPERATOR: ROA
PREPARED: 10/07/2005

Executed by serving_____/_____ copy (ies) of the within on
The Corporation Company as Statutory Agent for:
by leaving with: _____ Ledic Realty Management Serv
This the ___18___ day of ___Oct___
D. T. Marshall, Sheriff
Montgomery County, Alabama
By: _____

D.S.

10:30 A



AVS0305

ALABAMA JUDICIAL DATA CENTER
JEFFERSON        COUNTY
ORDER FOR SERVICE AND RETURN

RECEIVED
MONTGOMERY CO ALA

2005 OCT 11  A 8:23

CV 2005 005936.00
JOSEPH L. BOOHAKER

IN THE CIRCUIT  COURT OF JEFFERSON  COUNTY

D T MARSHALL
SHERIFF

SHERLEE GINSBERG ET AL VS LEDIC REALTY MANAGEMENT SERVICES ET AL

SERVE ON:   D002

Montgomery

C-K BRECKENRIDGE LLC
CLK MANAGEMENT CORP
150 SOUTH PERRY ST
MONTGOMERY       ,AL   36104-0000

NOTES:
    S&C/INTGS/REQ PRODUCTION/NOTICE TAKING DEPOSITION

TO ANY SHERIFF OR ANY AUTHORIZED AGENT:
              YOU ARE HEREBY ORDERED TO DELIVER THE ATTACHED DOCUMENT
              TO THE ABOVE NAMED PERSON AT THE ADDRESS INDICATED.

    10/07/2005   DATE           CLERK: ANNE-MARIE ADAMS           BY:_____
                                        RM 400 JEFF CO COURTHOUSE
                                        BIRMINGHAM   AL   35203
                                        (205)325-5355

    I HEREBY CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE ATTACHED
       DOCUMENT IN _____ COUNTY, ALABAMA
       TO:

    _____        _____
                                             SIGNATURE OF SERVER

    _____

    _____        _____
    NAME / ADDRESS ABOVE                      DATE

OPERATOR:  ROA
PREPARED:  10/07/2005

EXECUTED BY SERVING
A COPY OF THE WITHIN

C. K. Breckenridge

Ethylene Buzzell

This the 14 day of oct 05
D. T. MARSHALL
Sheriff Montgomery County
By _____
Civil Process Server
630

1:30

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| SHERLEE GINSBERG,<br>BERNARD GINSBERG,<br><br>Plaintiffs,<br><br>vs.<br><br>LEDIC REALTY MANAGEMENT,<br>SERVICES, INC., C-K<br>BRECKENRIDGE, LLC., CLK<br>MANAGEMENT CORP., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  CV 05-5936<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF FILING NOTICE OF REMOVAL

**TO: Anne-Marie Adams**, Clerk of the Circuit Court of Jefferson County, Jefferson County, Courthouse, 716 North Richard Arrington Jr., Blvd., North, Birmingham, AL 35203

COME NOW the defendants, Ledic Realty Management Services, Inc., and C-K Breckenridge LLC in the above styled action, and give notice that they have filed a Notice of Removal in the United States District Court for the Northern District of Alabama, Southern Division, thereby, removing the above styled cause from the Circuit Court of Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division.  A copy of the Notice of Removal is hereby filed with the Clerk of the Circuit Court of Jefferson County, Alabama, by being attached to this pleading.

MATTHEW W. ROBINETT ROB127
NORMAN, WOOD, KENDRICK & TURNER
Financial Center – Suite 1600
505 20th Street North
Birmingham, AL 35203
(205) 328-6643

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| SHERLEE GINSBERG,<br>BERNARD GINSBERG,<br><br>Plaintiffs,<br><br>vs.<br><br>LEDIC REALTY MANAGEMENT,<br>SERVICES, INC., C-K<br>BRECKENRIDGE, LLC., CLK<br>MANAGEMENT CORP., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CV 05-5936<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF FILING NOTICE OF REMOVAL

**TO: Anne-Marie Adams**, Clerk of the Circuit Court of Jefferson County, Jefferson County, Courthouse, 716 North Richard Arrington Jr., Blvd., North, Birmingham, AL 35203

COME NOW the defendants, Ledic Realty Management Services, Inc., and C-K Breckenridge LLC in the above styled action, and give notice that they have filed a Notice of Removal in the United States District Court for the Northern District of Alabama, Southern Division, thereby, removing the above styled cause from the Circuit Court of Jefferson County, Alabama, to the United States District Court for the Northern District of Alabama, Southern Division. A copy of the Notice of Removal is hereby filed with the Clerk of the Circuit Court of Jefferson County, Alabama, by being attached to this pleading.

MATTHEW W. ROBINETT ROB127
NORMAN, WOOD, KENDRICK & TURNER
Financial Center – Suite 1600
505 20th Street North
Birmingham, AL 35203
(205) 328-6643